THOMAS, Appellant, vs. DEPARTMENT OF TAXATION, Respondent.*

*January 14—February 25, 1947.*

---

* Motion for rehearing denied, with $25 costs, on May 13, 1947.

10

For the appellant there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

FOWLER, J. The case involves the imposition of an income tax against the appellant as a member of a claimed partnership consisting of the appellant and his wife, the profits of which were distributed equally between them according to an agreement between them claimed by the appellant to constitute a business partnership. The Department of Taxation based the tax imposed by it upon the whole net income of the business. The reason for the assessment as indicated by the statement of the assessor of incomes is that the arrangement between the spouses did not constitute a partnership. This statement reads as follows:

"The articles of copartnership have been carefully weighed and considered by me and I have concluded that Mrs. Thomas has rendered no service or capital to the enterprise, she has not acquired an interest in the business of the insurance agency by purchase, gift, or other disposition, and that the earnings of this agency are the result of personal service of yourself [taxpayer]."

The appellant applied to the department for an abatement of the tax. His petition was denied. He then duly appealed to the board of tax appeals. The board after trial of the issues raised on appeal reduced the tax by basing it on seventy-five per cent instead of the whole of the net earnings of the business during the years involved. The taxpayer took the board's decision to the circuit court for review, claiming the board should have computed his tax on his distributive share of the net earnings of the business as fixed by the claimed partnership articles and actually received by him. The circuit court

confirmed the board's decision and the taxpayer appealed to this court.

The business claimed to be a partnership is an insurance agency. The appellant had been conducting this business since 1915, except for a short time while in the military service during World War I. He first conducted it as a sole trader, then from 1930 or 1931 to 1936 as a corporation, then as a sole trader from 1936 to 1941, when the agreement of alleged partnership went into effect. During all this time the business was conducted under the name of H. H. Thomas Company, and the appellant had been licensed as an insurance agent. The insurance involved was principally based on bonds given by contractors for completion of construction contracts. The net profits during the two years herein involved, not including $5,000 a year taken by the husband as salary for managing the business, amounted to $56,138 in 1942 and $8,430 in 1943, and one half of these amounts was distributed to the husband. The premiums were required to be remitted to the insurer within stated periods, usually thirty days. The appellant was, and had been in the habit, of carrying the premiums for the contractors when they did not pay them in time for his remittance. To advance the premiums the appellant was obliged to borrow from a bank and to put up collateral to secure his loans. The collateral required was loaned to him by his wife who had inherited $250,000 to $300,000 in securities from her parents. The amount up as collateral to the husband's bank loans at the time the alleged partnership agreement was made was about $25,000. No interest had ever been paid to the wife for use of these securities or any compensation made for their use. When payment of the loan was made the securities for that loan were returned to the wife. This custom prevailed during the years involved. During these years the husband signed a note "H. H. Thomas Co." and indorsed it personally and got securities from his wife to put up as collateral. The amounts

so used as collateral were constantly $20,000 to $25,000. The wife never had had and did not have during the years involved any license as an insurance agent, nor did she perform any service or take any part in connection with the business except to supply use of the securities as stated. The business was conducted in every way after the agreement was made as before. There was no gift by the husband to the wife of a half interest or any interest in the business, nor was there any assignment or transfer of any interest in the business to the wife, or any words of assignment or transfer in the agreement. No tangible property of any kind was or had ever been used in the conduct of the business, as the husband was permitted to carry it on in the offices of the Fidelity & Deposit Company of Maryland maintained by that company in Milwaukee, of whose business in Milwaukee he was managing agent at a salary of $10,000 a year with the privilege of such use. The only thing of value connected with the business was its "good will" which was and would continue on cessation of operation under the alleged partnership agreement personal to the husband. The agreement provided for an annual accounting by the husband as manager of the business, and that at the time thereof each should be paid his share of the profits made during the year. There could be no accretion to the business except such as was comprised in "good will." The agreement also provided, by its last paragraph, that at its termination all gains, profits, and increments remaining "either in money, goods, wares, fixtures, debts or otherwise," should be divided between the parties equally.

It seems to us that the primary question in the case is:

(1) Did the agreement between the spouses constitute a partnership in carrying on the business? If this be answered "No" it is decisive of the case. If it be answered "Yes" then the question remains:

(2) Was the agreement between the spouses made for the purpose of escaping taxation by the husband?

The board considered that two questions were presented for determination which we designate (a) and (b).

(a) Under the facts here established, for income tax purposes, was there a *bona fide* partnership existing between the petitioner and his wife during 1941 and 1942?

(b) If such partnership is found to have existed to what share of partnership profits are the respective copartners entitled as reasonable and proper for income tax purposes?

The board inferentially answered its question (a) "Yes." The question as it is stated is one of law. The board assumed that because a husband and wife by the law of this state may constitute a business partnership which is true, *Sparks v. Kuss,* 195 Wis. 378, 398, 216 N. W. 929, 218 N. W. 208, and because the agreement set out in the statement of facts preceding the opinion was considerately entered into and on its face recites that it creates a partnership for carrying on the business previously conducted by the husband and provides for an equal division of its profits, it creates such a partnership. This ignores the statutory definition of a partnership declared by sec. 123.03 (1), Stats.:

"A partnership is an association of two or more persons to carry on as co-owners a business for profit."

The parties to the instant contract never became co-owners of the business because as above stated there was no transfer of any interest in the husband's insurance agency to the wife. The board also ignored the provision of sec. 123.15 (5), Stats.:

"All partners have equal rights in the management and conduct of the partnership business."

The agreement gave to the wife no right of management whatsoever but vested that right wholly in the husband.

Ch. 123, Stats., is the Uniform Law of Partnership adopted by several states. That the instant agreement does not constitute a partnership under that law appears from many decisions cited and stated at page 10 of the 1946 Cumulative Pocket Part attached to 7 U. L. A. "A 'partnership' is, in

effect, a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for the copartner." *In re Estate of Conover* (1938), 295 Ill. App. 443, 14 N. E. (2d) 980. "The indispensable requisites of a 'partnership' are co-ownership of a business and the sharing of its profits." *Provident Trust Co. of Philadelphia v. Rankin* (1939), 333 Pa. 412, 416, 5 Atl. (2d) 214. A "partnership" consists of "a contract of two or more competent persons to place *their* money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and share the loss in certain proportions." *Preston v. State Industrial Acc. Comm.* (1944) 174 Or. 553, 149 Pac. (2d) 957. To constitute a partnership "it must appear that the parties thereto are . . . joint owners of property belonging to the association." *Enos v. Picacho Gold Mining Co.* (1943) 56 Cal. App. (2d) 765, 771, 133 Pac. (2d) 663. "Co-ownership is an essential element of a partnership." *Walker, Mosby & Calvert, Inc., v. Burgess* (1930), 153 Va. 779, 151 S. E. 165. "Proprietary interest in business is necessary." *Smith v. Maine* (1932), 145 Misc. 521, 260 N. Y. Supp. 409, 425; *Northampton Brewery Corp. v. Lande* (1940), 138 Pa. Super. 235, 10 Atl. (2d) 583.

It is stated in 40 Am. Jur., Partnership, p. 154, sec. 41:

"The salient features of an ordinary partnership are a community of interest in profits and losses, a community of interest in the capital employed, and a community of power in administration. As has been said, community of interest is the basis of the partnership relation. Hence, in order to constitute a partnership, there must be such community of interest as enables each party to make contracts, manage the business, and dispose of the whole property."

. The instant agreement obviously did not create such a community of interest "as enabled the wife to make contracts, manage the business, and dispose of the whole property." Said sec. 41 also states that the cases are not in harmony as to the necessity for the community of interest to comprise anything

more than community of interest in profits and losses, which the instant agreement might be held to do. But this would seem not to be the rule under the Uniform Law of Partnership statutes. The decisions above cited are under this statute, the definition of which, 7 U. L. A. p. 10, sec. 6, is identical with the language of sec. 123.03 (1), Stats., above quoted. These decisions would seem to settle the point that under that statute community of interest in the entire business is essential.

The two latest decisions of the supreme court of the United States, *Commissioner v. Tower,* 327 U. S. 280, 66 Sup. Ct. 532, 90 L. Ed. 670, and *Lusthaus v. Commissioner,* 327 U. S. 293, 66 Sup. Ct. 539, 90 L. Ed. 679, are in line with the community-of-interest rule of the case above quoted from 40 Am. Jur. The *Tower Case* holds:

"A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the tax court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws."

We would change the above quotation by substituting "the" for "these," "board of tax appeals" for "court," "should" for "may," and the word "state" for "federal," and adopt the statement as the holding of this court in this case.

Under the rule above stated as the rule of this court, we hold that the board should have held that under the undisputed facts before it and the face of the agreement the partnership claimed is not real and the board should have affirmed the original assessment of the assessor.

Had the Department of Taxation appealed from the judgment of the circuit court assessing the appellant's tax on seventy-five per cent of the profits of the business instead of

fifty per cent, or filed herein a motion to review the ruling of the circuit court affirming the decision of the board, the department would be entitled to a reversal with direction to the circuit court to enter judgment reversing the decision of the board and directing it to affirm the assessment made by the department. But the department not having done either we must affirm the decision of the circuit court. The appellant is not prejudiced because the board's assessment was less than it should have been and he is not entitled to reversal on that ground.

*By the Court.*—The judgment of the circuit court is affirmed.

FRITZ, J., dissents.

The following opinion was filed May 5, 1947:

FOWLER, J. (*on motion for rehearing*). The case is before us on three motions of the plaintiff:

(1) This motion is to delete from the written opinion the following sentence:

"It is conceded by appellant's counsel that the agreement is void as a partnership agreement under income tax laws of the state if it was entered into for the purpose of escaping or as a device to escape income taxation. . . ."

We understand that counsel for plaintiff, in answer to a question put by a member of the court, made the concession stated. He says that he did not and his original brief contends to the contrary. The statement has no bearing on the issue on which the case was decided. The motion is granted with the apology of the writer. The reporter will delete the paragraph from the report of the opinion.

(2) This motion is to change the mandate to direct return of the record to permit the plaintiff to produce evidence to show that it was the intent of the parties to make the wife a co-owner with her husband of the business and give her equal rights in its management. Such testimony would not change the effect

of the agreement signed by the parties as the following from the testimony of the parties shows:

"*Q.* [To Mr. Thomas] Did you make a gift to Mrs. Thomas of a half interest in the agency business? *A.* I didn't consider it a gift. The partnership consideration was the use of her securities. *Q.* Did Mrs. Thomas have a voice in the management of the agency? *A.* No sir. *Q.* [To Mrs. Thomas] You do not pass upon the people that Mr. Thomas hires in his business at the office? *A.* I have nothing to do with the office."

The testimony above quoted is enough to support a conclusion of law that the agreement did not transfer a half interest in the business or give to Mrs. Thomas equal rights with her husband in its management. The ground of the decision was that the agreement did not constitute the parties co-owners of the business or give the wife the rights of management required by the provisions of the Uniform Partnership Act adopted by the state legislature. It matters not what courts of jurisdictions where this act is not in force may have said as to what does or does not constitute a partnership, or what this court may have said before the legislature adopted the act. The law of Wisconsin on the subject is as declared by the legislature.

At the conclusion of the testimony presented by the board, the following occurred:

"Mr. Slater [of the Board]: Does that conclude your presentation? Mr. Paulson: That is all.
"Mr. Slater: And also the state? Mr. Teschner: That concludes the state's also."

If under the above from the record the plaintiff is entitled to the relief demanded by his motion, it is hard to conceive of a case in which the defeated party would not be entitled to a new trial by merely saying that he wanted it.

The motion is denied, without costs.

(3) On the motion for rehearing nothing not covered by the original briefs is presented unless it be the statement that the

validity of the partnership was conceded by the department before the board and before the circuit court. The invalidity of the agreement is directly alleged in the answer of the department before the board of tax appeals. In plaintiff's original brief the Uniform Partnership Law is referred to and contention made that a partnership under that act was created. That the plaintiff did not make a gift to his wife of a half interest is argued, and confessedly the agreement contains no transfer of such interest and no other transfer of such interest is claimed. That no such transfer was made is contended by the department in its brief; that no gift was made; that no working agreement was made; therefore no partnership was created.

The motion for rehearing is denied with $25 costs.