BOWERS, Plaintiff and Respondent, v. TREUTHARDT and others, Defendants and Respondents: LUDDEN, Administrator, and another, Defendants and Appellants.

*October 7—November 5, 1958.*

For the appellants there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Louis D. Gage, Jr.,* and by *Roy E. Berg,* all of Janesville.

For the respondent Helen I. Bowers there was a brief by *Gruhle & Fessler* of Sheboygan, and oral argument by *Jacob A. Fessler.*

For the respondents Treuthardt, Waelti, and the General Casualty Insurance Company there was a brief and oral argument by *John C. Wickhem* and by *Robert H. Consigny,* both of Janesville.

FAIRCHILD, J. Appellants assert that the finding of Mrs. Ludden's causal negligence as to lookout was not supported by the evidence; that there was no joint enterprise; and that an instruction which erroneously stated the statutory speed limit was prejudicial. Treuthardt and his insurer contend that if the question were reached, the finding of Treuthardt's causal negligence for failure to yield half the highway was not supported by the evidence.

We conclude that the evidence supports the challenged findings of the jury, that Mrs. Ludden and Mrs. Bowers were not engaged in a joint venture, that the error in the instructions was immaterial, and that judgment should have been granted in favor of Mrs. Bowers against Treuthardt and his insurer, as well as against the other defendants, and for contribution as demanded in the cross complaints of the defendants.

(1) *Mrs. Ludden's negligence as to lookout.* Treuthardt testified in substance that when he was 200 feet north of the intersection, Mrs. Ludden's car was coming to a stop on Highway C, close to Highway T. He saw the car stop when he was about 100 feet north of the Ludden car. He had put his foot on the brake and when the car stopped, he took his foot off the brake and prepared to accelerate. Just

then he saw the Ludden car lunge forward and he applied the brakes as hard as he could. He was then 50 to 60 feet north of the intersection. Treuthardt testified that his tractor struck the Ludden car while the car was in the west (his right) lane of Highway T with its front wheels across the center line of Highway T. He claimed that Mrs. Ludden had again come to a stop in that position.

A passenger in Treuthardt's tractor was asleep until awakened by the impact. Mrs. Ludden died shortly after the collision and Mrs. Bowers was the only other eyewitness. She testified in substance that she saw the lights of the tractor when it was 150 to 200 feet north of the intersection. Mrs. Ludden had stopped on her right-hand side of Highway C. After Mrs. Bowers saw Treuthardt's lights, there was a brief conversation—Mrs. Ludden saying that they had lots of time and could go on and Mrs. Bowers saying that they were not in any hurry and should wait. Mrs. Ludden, however, started straight east, made her turn to the left and the car was hit. Mrs. Bowers thought they had completed the turn to the north and were on the east shoulder of Highway T at the time of impact.

In view of the conversation related by Mrs. Bowers, the jury could properly determine that Mrs. Ludden saw the tractor-trailer, but proceeded because she failed to observe that it was too close or coming too fast to permit her to cross safely in front of it. Failure properly to evaluate what is seen is as much an element of negligent lookout as not to see the source of danger at all. *Plog v. Zolper* (1957), 1 Wis. (2d) 517, 527, 85 N. W. (2d) 492.

(2) *Erroneous instruction as to speed limit.* The court instructed the jury that it could consider the speed of the tractor-trailer in connection with the question as to Treuthardt's management and control. The court also stated that the statutory speed limit was 55 miles per hour. Because of the weight of the tractor-trailer, the statutory limit was in

fact 45 miles per hour. Treuthardt had testified that his speed was about 40 miles per hour when he first saw the Ludden car and that he reduced his speed after that. Mrs. Bowers had estimated his speed at 50 or 55 miles per hour. If we were to assume that the jury would have accepted Mrs. Bowers' estimate and found Treuthardt negligent as to management and control if instructed that the speed limit was 45 miles per hour, the only ultimate effect would have been to increase the percentage of the total negligence attributed to Treuthardt. Because of our conclusion on the issue of joint venture and because there was no issue among the defendants except as to contribution, comparison of negligence becomes immaterial.

(3) *Treuthardt's negligence.* Mrs. Bowers' complaint alleged a failure to yield the right of way to other automobiles but did not allege failure to give half the main-traveled portion of the roadway to a driver proceeding in the opposite direction nor failure to operate on the right half of the roadway. The Ludden cross complaint alleged both a failure to yield right of way and a failure to yield one half the main-traveled portion of the roadway. No question was submitted on position on the highway except the question on yielding one half the main-traveled portion. In instructing the jury the court did say that a statute requires that upon all highways of sufficient width, the operator of a motor vehicle shall operate it on the right half of the roadway. (Sec. 85.15 (1), Stats. 1953.) He stated further that a statute also requires that operators of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one half of the main-traveled portion of the highway as nearly as possible. (Sec. 85.15 (4), Stats. 1953.) After discussing the fact that the second statute applies only where the operators were proceeding on the same highway in opposite directions, the court stated as follows:

"If you are convinced, therefore, by a preponderance of the evidence to a reasonable certainty that the Ludden car at the time of the collision had completely entered and had begun to travel wholly upon the east lane of County Trunk T prior to the collision, while the tractor-trailer was proceeding in a southerly direction, and that while it was so proceeding the tractor-trailer failed to yield one half of the main-traveled portion of the highway as nearly as possible to the Ludden car, as required by the statute, then you should answer this question 'Yes.' If you are not so convinced you should answer it 'No.' "

The pavement on Highway T was 20 to 22 feet wide and there was a center line. After the collision the tractor was partially across Highway T facing east and opposite the approximate center of Highway C. The front wheels were five or five and one-half feet east of the center line of Highway T. The trailer was facing south in the west lane north of the tractor. The tractor had jackknifed. Mrs. Ludden's car was on the east shoulder of Highway T facing north with its front end about even with the fence line on the south side of Highway C and about 37 feet away from the tractor.

There was debris on the pavement, primarily dirt knocked from underneath the vehicles. Ninety-five per cent of it was in the east lane of Highway T and it was located about 27 feet north of the rear of the trailer. The tractor was 12 feet long and the trailer was 30 feet long. The investigating officer concluded that the debris marked the apparent point of impact and on a map of the scene he sketched this debris approximately 30 feet north of a point opposite the position at which Treuthardt indicated the Ludden car had stopped before entering the intersection. From the debris, tire marks, which appeared to be the result of tires sliding sideways, led 51 feet southward in an arc generally toward the point at which the Ludden car had come to rest. Skid marks left by the rear wheels of the tractor were traced back from the

tractor under the trailer and 99 feet north from the rear end of the trailer. From the point where these tracks began, they traveled south in straight lines for about 50 feet. For this distance the mark made by the left wheel was between one and two feet east of the center line. About 15 or 20 feet north of the apparent point of impact, the mark made by the left wheel crossed the center line toward the west and converged with the mark made by the right wheel as the tractor jackknifed. The damage to the tractor was described by the officer as a damaged grill, left front fender and headlight, and bumper at the left front corner. The officer said that the left side of the automobile was partially torn away and it appeared to be a tearing damage along the side of the automobile from front to rear.

It might be possible to interpret the pictures and diagram in evidence as supporting a determination that the tractor-trailer traveled straight south until the impact and the tractor jackknifed afterward. If that view were accepted, Mrs. Ludden's car was still in the west lane, for the most part, when hit and the fact that Treuthardt failed to operate the tractor-trailer completely on the right half of the roadway would probably not be causal.

On the other hand, the location of the debris and tire marks southward from it would tend to show that the impact occurred after Mrs. Ludden's car was wholly in the east lane and that the tractor must have commenced to jackknife before the impact, perhaps as a result of the hard application of brakes. Considering that such application was a response to the emergency, the jury could well conclude that Treuthardt's operation of the tractor-trailer with its left wheels to the left of the center line had made some contribution to the emergency.

The court having so emphatically instructed the jury that this particular question must be answered "No" unless the jury considered that Mrs. Ludden's car was wholly in the

east lane when struck, the jury's finding is to be so interpreted and the evidence sustains it.

(4) *Joint venture.* On the morning of the day of the accident, Mrs. Ludden called Mrs. Bowers and asked her to go with Mrs. Ludden to New Glarus. Mrs. Ludden had a prospective customer for a silver service. They had driven to New Glarus, the sale had been made, and they were on their way home when the collision occurred. They were both "silver consultants" for a company known as Home Decorators. Mrs. Bowers had done the selling; Mrs. Ludden had written up the order. Because Mrs. Ludden's name was on the order, she was entitled to a commission on the sale. Mrs. Bowers testified that there was no contract between them.

The two ladies had been recruited at different times by a Mrs. Wiltse, a division counselor for Home Decorators. Mrs. Wiltse testified that she had 11 women working under her, including Mrs. Bowers and Mrs. Ludden; that the women did not work in partnership; "they would go out maybe once in a while together, but they were under no contract to work together; it was just for company's sake." Each of the ladies had a sample kit; each was under a contract with the home office; the home office was not concerned with any arrangements the ladies might have between themselves when they went together; whoever wrote up the order would get the commission on a sale; and any method of splitting the commission between the ladies would be their own affair.

Mrs. Bowers testified on this subject both at an adverse examination and upon the trial. At the adverse examination she gave the testimony less favorable to herself upon this issue. She testified that she "worked for" Mrs. Ludden; that they would call on girls who were interested in the product and Mrs. Bowers would do the selling and Mrs. Ludden would do the writing up of the order. Mrs. Bowers went out and sold for herself, not with Mrs. Ludden, about once or twice

a week. She guessed the two had gone out together perhaps a dozen times. On some of these occasions Mrs. Bowers had taken her car. When they went together the commissions were shared on a 50-50 basis. They used Mrs. Ludden's kit.

At the trial Mrs. Bowers retracted some of her testimony at the adverse examination. She testified she had never taken her car; that she did not go with Mrs. Ludden 12 times and had not split commissions with her more than three times. She also testified that the prospects on whom they called together were Mrs. Ludden's; that Mrs. Ludden went to the door first and called Mrs. Bowers in if she thought she needed help.

Treuthardt's position is that the operation of the Ludden automobile was part of the execution of a joint business venture. If so, Mrs. Ludden's negligence would be imputed to Mrs. Bowers, both for the purpose of reducing or preventing her recovery from a negligent third party, as here, and making her liable if a third party had sustained damage.

Two essential elements of joint enterprise are an agreement among the parties to share profits and losses and the right to control the operation involved in the enterprise jointly undertaken. Imputation of negligence by reason of the existence of a joint enterprise is an affirmative defense and must be proved by the party asserting it. *Lewis v. Leiterman* (1958), 4 Wis. (2d) 592, 596, 91 N. W. (2d) 89.

"A joint proprietary interest and a right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure. Whether a single adventurer owns all of the property used in the joint adventure does not seem conclusive in determining whether the relationship of joint adventure exists, since it is well recognized that the better rule is that joint ownership of the property used in carrying on the business is not necessary. On the other hand, before finding parties to be joint adventurers, courts ordinarily require clear evidence of a community of interest in a common undertaking in which

each participant has or exercises the right of equal or joint control and direction. Each of the parties must have equal voice in the manner of its performance and control over the agencies used therein, though one party may intrust the performance to another." 30 Am. Jur., Joint Adventures, p. 945, sec. 10.

It may be readily inferred from the past conduct of Mrs. Bowers and Mrs. Ludden, that when the trip to New Glarus was undertaken they had an understanding or agreement that Mrs. Ludden would pay Mrs. Bowers one half of any commission on the sale. The next question, however, is whether this was merely compensation for Mrs. Bowers' helpful services, or whether their agreement contemplated that Mrs. Bowers would have as much to say as to how the business would be done as Mrs. Ludden.

"Participation in profits, although an important factor in determining whether a joint adventure exists, does not of itself establish the existence of the relationship, unless it is coupled with other essential elements such as an intent of the parties to become joint adventurers, joint proprietorship and control, etc." 30 Am. Jur., Joint Adventures, p. 946, sec. 11.

In our review of the record, we do not find clear evidence of a right of equal control of the business of selling the silver. If Mrs. Bowers "worked for" Mrs. Ludden, as she expressed it at the adverse examination, that implies there was no joint control. The prospect on the day of the accident was Mrs. Ludden's as had generally been the case on previous occasions when the parties went out together. It was the uniform practice that Mrs. Ludden wrote the order in such form that the company's liability for commission was to Mrs. Ludden alone. We conclude that the evidence does not sufficiently show that the relationship between the parties was that of joint venture rather than of employment.

*By the Court.*—Upon the appeal of the defendants Ludden and Travelers Indemnity Company, the portions of the judg-

ment allowing recovery to plaintiff and limiting the recovery against Travelers Indemnity Company are affirmed. Upon said appeal and plaintiff's motion to review, the balance of the judgment is reversed, and the cause is remanded with directions to enter judgment, consistent with the opinion, in favor of plaintiff and against defendants Treuthardt and General Casualty Insurance Company, and for appropriate contribution among the defendants.

MARTIN, C. J., and BROWN, J., took no part.