VANDERBLOEMEN and wife, Appellants, v. SUCHOSKY and another, Respondents.

*May 4—June 2, 1959.*

For the appellants there was a brief by *Hanaway & Byrnes,* and oral argument by *Charles T. Hanaway* and by *Richard G. Greenwood,* all of Green Bay.

For the respondents there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *James L. Everson* and *E. L. Everson.*

BROADFOOT, J.   The plaintiffs contend that the trial court erred in submitting questions in the special verdict with reference to the negligence of Leo Vanderbloemen for the reason that he was confronted by an emergency.

Leo Vanderbloemen testified that the collision occurred before he reached the curve in the highway; that when Suchosky came around the curve he was driving on the east side of the highway, which was to Suchosky's left; that he continued to drive in the same lane and that Vanderbloemen turned left in an attempt to avoid the collision. Suchosky testified that the accident happened north of the curve and that when Vanderbloemen came around the curve he was bearing to his left and invaded the west lane of traffic.

It is apparent from the record that the collision took place north of the curve shortly after Vanderbloemen made the turn. The vehicles were left standing after the collision and the traffic officer who investigated the accident, together with Suchosky, fixed the point of the collision with reference to a driveway and a telephone pole.

There were other conflicts in the testimony. Vanderbloemen testified that although there was some snow falling it was light and did not affect visibility and that the highway was free of ice and snow, although there were snowbanks

on each side of the road where the snow had been plowed out. Suchosky and the traffic officer testified that the highway was icy and slippery; that it was cloudy; that there was light snow falling and that snow was drifting. Vanderbloemen testified that he did not put on his brakes or sound his horn but turned to the left to avoid the accident. According to his version the vehicles were several hundred feet apart when he saw the truck come around the curve.

In its memorandum decision the trial court stated that the questions with respect to the causal negligence of each driver were typical jury questions. We agree. It could not be ruled as a matter of law from the record that Vanderbloemen was faced by an emergency.

The plaintiffs further contend that if an emergency did not exist the action of the plaintiff driver in turning to the left across the center line is negligence only as to management and control and that findings that he was negligent both as to management and control and driving across the center line are duplicitous. We cannot agree with that contention. The jury was entitled to find that he was causally negligent with respect to management and control because of his failure to apply his brakes or to do anything to avoid the accident except turn to the left. Vanderbloemen was clearly over the center line at the time of the collision, and the record justifies that finding by the jury. The questions related to different acts of negligence and they were not duplicitous. In *Olson v. Milwaukee Automobile Ins. Co.* 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740, appears the following statement:

"It is the well-recognized rule that when a jury's findings are attacked, particularly when they have had the trial court's approval, our inquiry is limited to the issue whether there is any credible evidence that, under any reasonable view, supports such findings. With the rule in mind we

consider that it is necessary to recite only the testimony which supports the jury's findings. Some of it is in dispute, but as to the disputed testimony we must recognize that it was for the jury to determine where the truth lies."

Plaintiffs' contentions are based upon testimony most favorable to themselves. In our review we need only look for credible evidence that, under any reasonable view, supports the jury's findings, particularly since they have had the trial court's approval.

It is further contended that the trial court erred in refusing to hold as a matter of law from the evidence that the plaintiffs were not engaged in a joint enterprise. In support of this contention it is first argued that the cases of *Lewis v. Leiterman,* 4 Wis. (2d) 592, 91 N. W. (2d) 89, and *Bowers v. Treuthardt,* 5 Wis. (2d) 271, 92 N. W. (2d) 878, are controlling. Those cases involved single trips in an automobile. It is apparent that the plaintiffs are confusing that situation with the law applicable to a continued association in a business enterprise such as the supper club. The record discloses that the plaintiffs purchased the property in which the supper club was operated in 1944, and title thereto was in both names as joint tenants. The parties maintained two bank accounts, one a checking account in the name of Leo Vanderbloemen, upon which his wife had authority to draw, and a savings account in their joint names. The title to the automobile was in Leo's name alone, as were various state and federal licenses involved in the operation of the business. Tax returns were made in Leo's name alone.

Because of the fact that all licenses were in Leo's name and because a part of the business consisted of the operation of a tavern, the plaintiffs contend that the cases of *Sponholz v. Meyer,* 270 Wis. 288, 70 N. W. (2d) 619, and *Brill v. Salzwedel,* 235 Wis. 551, 292 N. W. 908, are controlling. Those cases involved suits for an accounting by persons

who claimed to be undisclosed and inactive partners in a tavern business and in each case it was held that such agreements were illegal and unenforceable because in violation of the licensing statutes. The cases are not applicable to the situation here. Mrs. Vanderbloemen testified that they operated the business together and that both of them were proprietors of the business. There were statements by Leo Vanderbloemen in which he used the plural, "that we were to have a banquet" and "our supplier did not have enough steaks;" further, that his wife did the cooking and that she had something to say about the handling of the help, waitresses, etc.

In reviewing the record in the light of the rule stated above in the *Olson Case,* we find credible evidence to support the jury's finding. No prior decision of this court can be controlling, but the case most applicable to the facts here is *Howard v. Riley,* 257 Wis. 594, 44 N. W. (2d) 552.

Finally, the plaintiffs contend that the trial court erred in its instructions to the jury on joint enterprise. It is claimed that the instruction given was not only inaccurate but was inadequate, particularly in view of an inquiry for further instructions made by one of the jurors. No instructions were requested by the plaintiffs respecting joint enterprise, and the challenge of the instruction now is that no reference was made therein to control such as is given in single automobile-trip cases. Under the testimony in the present case we find the instruction to be adequate and accurate. After retiring for their deliberations the jury returned and one of the jurors inquired as to the meaning of the questions in the special verdict as to joint enterprise. A record was made of the proceedings and it is apparent therefrom that the juror was inquiring as to the effect of jury answers. The trial court properly instructed the jury that it could give them no information as to the effect of

their answers, as it was the duty of the jury to find the facts and of the court to determine the legal rights of the parties after the verdict was returned. We can find no error resulting from this incident.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.