ESTATE OF STARER: STARER, Administratrix, Appellant, v. MILWAUKEE GENERAL INSURANCE AGENCY, INC., Respondent.

*May 1—June 4, 1963.*

For the appellant there was a brief and oral argument by *Evan C. Schwemer* of Milwaukee.

For the respondent there was a brief and oral argument by *Herbert L. Mount* of Milwaukee.

HALLOWS, J. The sole question on appeal is whether the findings of the trial court are against the great weight and clear preponderance of the evidence. If the findings are not, we must affirm. *Lindsay v. Housing Authority* (1963), 18 Wis. (2d) 624, 119 N. W. (2d) 357; *Utech v. Milwaukee* (1960), 9 Wis. (2d) 352, 101 N. W. (2d) 57. The appellant argues the claim should have been disallowed because the claimant and the deceased were engaged in a joint adventure and the claimant must bear the loss due to insolvency. It is contended all four of the elements necessary to constitute a joint enterprise have been proved by the admitted facts or must necessarily be inferred from the circumstances and the conduct of the parties.

In *Edlebeck v. Hooten,* ante, p. 83, 121 N. W. (2d) 240, we discussed the law of joint adventure in a somewhat-different context than presented here. We pointed out four elements of joint adventure, namely: (1) Contribution of money or services, (2) joint or mutual control, (3) an agreement to share profits although not necessarily the losses, and (4) a contract establishing the relationship. In that decision, we reserved the question whether the sharing of losses as well as sharing the profits is a necessary element. In *Bowers v. Treuthardt* (1958), 5 Wis. (2d) 271, 92 N. W. (2d) 878, and in *Lewis v. Leiterman* (1958), 4 Wis. (2d) 592, 91 N. W. (2d) 89, we indicated a joint

adventure included the sharing of losses as well as profits. We believe those decisions to be correct. While there is a conflict in the authorities, we adopt the rule it is not necessary to prove an express agreement relating to the sharing of losses in order to establish a joint adventure between one party supplying services and the other party furnishing money, but once that relationship has been established the sharing of losses will be implied from the sharing of profits excepting in those cases in which an express agreement exists not to share losses. See 30 Am. Jur., Joint Adventures, p. 947, sec. 11; 48 A. L. R. 1059, 63 A. L. R. 911, 138 A. L. R. 973.

A review of the material facts is necessary. In 1955 Matthew P. Zendzian became interested in an import item from Italy handled by the deceased who operated an import business. Zendzian and two other men organized the claimant corporation, of which Zendzian became president. The corporation furnished money to the deceased to finance the purchase of imports. This money was borrowed at interest by the claimant from its own bank. In each of the 137 transactions between the claimant and the deceased, the latter would represent to the claimant he had sales covering the requested loan and needed the money to finance the import purchases. The evidence indicates the claimant was to be repaid the amount of money furnished, plus the bank interest and a share of the net profits from the sale of the merchandise of each transaction. The repayment of each loan was to be made out of the proceeds of the collection of the applicable accounts receivable although the receivables were not assigned and apparently in some cases this arrangement was not followed by the deceased. The transactions were carried on the books of the deceased as loans and over the period of years the amount of the share of profits as determined by him and paid to the claimant amounted to $37,795.48. The notes bore no maturity date

and no demand for payment was ever made upon the deceased. Mr. Zendzian and the deceased were close friends and Zendzian was at the deceased's place of business two or three times a week, and went to Europe with the deceased five or six times and once to Mexico, during which trips the deceased purchased samples of merchandise which were intended for use in making sales.

There is no dispute the claimant furnished money for the purchase of merchandise to be imported and sold by the deceased. The question is whether this money was furnished as a loan or as a contribution to capital of a joint adventure. The appellant argues it is significant that the maturity dates and interest were not specified in the notes which she views merely as evidence of the amount of money furnished. It is quite clear from the evidence the money furnished was as a loan to finance individual transactions and not as a contribution of money to finance a business. Likewise it is clear the notes were to be repaid upon the collection of the accounts receivable to which the loan related and the amount of interest was dependent upon the profit from those transactions. The amount of the notes which were paid was paid by check separately from the interest and the deceased's ledger and journal entries were made accordingly. The promissory notes containing no maturity date were demand notes. Sec. 116.11 (2), Stats. No demand was made and no dates certain could be inserted in the notes because of the agreement to repay the amount of the note from the accounts receivable. Neither did the claimant know of any defaults in the arrangement of payment until after the death of the deceased.

We believe sec. 123.04, Stats., is applicable. That section provides no inference of a partnership relationship can be drawn because one of the parties shares in the profits of a business venture in the payment of a debt as interest on

a loan even though the amount he is paid varies with the profits of the business. The sharing of profits here was as interest on a loan or for the use of money to be repaid. The appellant relies on *Rosenfield v. Haight* (1881), 53 Wis. 260, 10 N. W. 378, but that case is not controlling. There the court found the money advanced was to remain as a permanent fund in the business for a term of not less than one year nor more than five at the option of the lender and in consideration of the loan other persons were to devote their time and skill to the business. It is true the lender was to receive a share of the profits periodically but the court found there was no understanding for the repayment of the money advanced but only a provision that if the agreement was violated the borrower was entitled to terminate the contract and take possession of the property and thus reimburse himself for the advances made. Since the decision, sec. 123.04 was enacted. Under this section the trial court could draw no inference of a joint adventure from the fact the claimant was to share in the profits of the deceased's business in the payment of the debt as interest on the loan. Even participation in profits as profits, while important, is not determinative. *Bowers v. Treuthardt, supra;* 30 Am. Jur., Joint Adventures, p. 946, sec. 11.

The appellant argues the form of the notes is not controlling and the whole course of conduct of the parties must be taken in the context of the claimant's mutual control with the deceased over the enterprise. This latter contention is based upon an inference drawn from the fact the claimant frequented the business place of deceased and went on business trips with him. There is testimony, however, to the effect the claimant called on the deceased for other business purposes involving insurance and went with the deceased to Europe and Mexico because he liked to travel. Nor is it unusual for individuals or lending institutions to

closely follow the business of a borrower especially where the credit is extended on open account. Where the borrowings are continuous, such close contact is an effective method by which the lender informs himself of the desirability of continuing the account and protects his loans. The trial court was correct in concluding the close business contact between claimant and deceased did not necessarily involve a voice in the business by the claimant or give it a right of joint control. The court might have inferred the claimant could offer advice to the deceased about his business but it could not reasonably infer it had a right to give advice and to control the business which it did not exercise. All the testimony shows is the claimant had the right to refuse to make further loans if it thought good judgment was not being exercised by the deceased. This is not the type of control inherent in the concept of a joint adventure.

Appellant further contends there was no express agreement to share losses, because the parties believed there would be none. The more-reasonable inference from the evidence is there was no express agreement to share losses because the claimant did not put the money at the risk of the business in the sense it was furnished as capital. Cancellation of orders and uncollectible accounts were not offset against any of the notes and at most only affected the amount of profit to be paid as interest. The appellant confuses the sharing of losses with the possibility of loss. Almost every lender of money runs a risk of loss but by that possibility he does not necessarily agree to assume it. The evidence leaves no room for an inference the claimant furnished money on the implied understanding that if the deceased was unable to pay the promissory notes, he had no obligation to do so.

It is contended by the appellant that third parties are involved and in such cases the intention of the coadventurers does not govern their relationship as to the third party.

Assuming other creditors of the deceased to be third parties because the amount of recovery on their claims is affected by the allowance or disallowance of this claim, we do not consider the relationship between this claimant and the deceased can be converted from debtor and creditor to a joint adventure. We find no evidence of a course of conduct between the claimant and the third parties which would justify a finding of an apparent joint adventure as to them. The relationship between the claimant and the deceased must be judged by the ordinary rules of interpretation and construction of contracts.

The appellant's position rests upon the proposition the trial court could have found from the evidence and from the reasonable inferences to be drawn therefrom that a joint adventure existed, but the test on appeal is not what the trial court could have found but whether what the court did find is against the great weight and clear preponderance of the evidence. We believe it is not and the trial court should be affirmed.

*By the Court.*—Judgment affirmed.