SKAAR and wife, Respondents, v. DEPARTMENT OF REVENUE, Appellant.*

*No. 293. Argued October 2, 1973.—Decided November 12, 1973.*
(Also reported in 211 N. W. 2d 642.)

\* Motion for rehearing denied, without costs, on December 21, 1973.

For the appellant the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondents there was a brief and oral argument by *Lloyd A. Schneider* of McFarland.

HANLEY, J. The sole issue is whether the Wisconsin tax appeals commission erred in affirming the Department of Revenue's denial of the taxpayers' application for abatement of the additional income tax assessment by concluding that, as a matter of law, no bona fide partnership existed.

While the Wisconsin income tax is modeled upon the federal system, the personal income tax treatment of married individuals under the federal and Wisconsin tax provisions is dissimilar. Under the federal system, married individuals are permitted to file a joint return and effectively split their income even though all income and deductions belong to only one spouse.[1] Wisconsin, on the other hand, while permitting married individuals to file jointly, taxes each spouse individually on his income and deductions and income splitting is not allowed.[2]

As a result of such treatment under the Wisconsin income tax, taxpayers attempted through numerous devices to achieve an income tax splitting similar to that allowed under the federal system. One of these devices was the family or husband-wife partnership. By avail-

---

[1] 26 USCA, sec. 6013.

[2] This court ruled in *Amerpohl v. Tax Comm.* (1937), 225 Wis. 62, 272 N. W. 472, that Wisconsin's income tax provisions as per joint returns—sec. 71.09 (4), Stats. 1937—were unconstitutional as written. The legislature has since failed to enact a provision for filing joint returns similar to the federal system.

ing himself of this device, the taxpayer who at that time was a sole proprietor of a business would form a partnership with his wife. Since partnership income is taxed to the partners and not the partnership itself, a taxpayer could, by making his wife or another family member his partner, effectively split his income and realize a result similar to that of the federal joint tax return.

The family partnership was, prior to a statutory definition thereof in 1950,[3] an often litigated tax saving device. Such litigation arose primarily because of suspicion generated as to the bona fideness of such inter-family transactions. As a result, the federal courts closely scrutinized each individual transaction.

". . . transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny." *Commissioner v. Tower* (1946), 327 U. S. 280, 291, 66 Sup. Ct. 532, 90 L. Ed. 670.

We concur with this rationale and shall closely scrutinize the alleged partnership here present so as to determine whether or not for Wisconsin income tax purposes a bona fide partnership exists.

Since Wisconsin has adopted the Uniform Partnership Act,[4] we must initially look there for guidance. Sec. 178.03 (1), Stats., defines a partnership as an "association of 2 cr more persons to carry on as co-owners a business for profit." More specifically, it is recognized that four elements need be met so as to qualify as a partnership. Initially, the contracting parties must intend to form a bona fide partnership [5] and accept the legal requirements and duties emanating therefrom. Secondly, there must exist a community of interest in

[3] 26 USCA, sec. 704 (e).

[4] Ch. 178, Stats.

[5] *Anderson v. Anderson* (1972), 54 Wis. 2d 666, 196 N. W. 2d 727.

the capital employed.[6] Thirdly, there must be an equal voice in the management of the partnership.[7] Finally, there must be a sharing and distribution of profits and losses.[8] Applying these elements to the case at bar, we hold that a bona fide partnership was not created. While the taxpayers may have desired to create a marital financial relationship similar to a partnership, it is clear they did not intend to create a bona fide partnership.

Initially, the parties to a partnership must intend to contractually form the legal relationship of a partnership. Such an intent is not shown here. While the W.T.A.C. found that the parties had reached an oral understanding, such oral understanding does not show the necessary intent. The oral understanding is more consistent with their marital relationship than with the existence of a bona fide partnership.

There do exist many indications that the taxpayers did not intend to create a bona fide partnership. They did not file partnership tax returns as required both federally and in Wisconsin. We think that if the taxpayers had intended to form a bona fide partnership they would not have violated the federal [9] and Wisconsin [10] legal requirement of filing. Likewise, the taxpayers failed to pay the federal self-employment tax for Mrs. Skaar which would have been required had said business arrangement been a partnership.[11] Such tax surely would have been paid had the taxpayers intended to form a partnership and fulfill the legal requirements. The

[6] *Thomas v. Department of Taxation* (1947), 250 Wis. 8, 26 N. W. 2d 310.

[7] Sec. 178.15 (5), Stats.

[8] *Thomas v. Department of Taxation, supra.*

[9] 26 USCA, sec. 6031.

[10] Sec. 71.10 (3), Stats. Such a return is also required of a joint venture. Sec. 71.02 (2) (i), and 26 USCA, sec. 761 (a).

[11] 26 USCA, secs. 702 (a) and 1402 (a).

record discloses they were familiar with such requirements.

There are other indications the taxpayers did not intend to form a partnership. There was no automobile liability insurance coverage for Mrs. Skaar even though had a bona fide partnership been created, Mrs. Skaar would be liable for the tortious acts of her partner.[12] Similarly, the books of the farm operation were not kept in a manner consistent with a bona fide partnership in that there was no division of the farming operation profits between the taxpayers. In fact, the lower court found that the taxpayers did not consider themselves partners in a legal sense.

The taxpayers argue that their desire to own everything together—their holding both farms in joint tenancy and their expressed desire to hold whatever personalty they own similarly—established the fact that they intended a partnership. Such is not the case. A partnership is not implied merely from a common ownership of property.[13] The facts that the community recognized Mrs. Skaar as possessing the authority to bind the farming enterprise and that Mrs. Skaar helped manage and operate the farm are not in themselves controlling. Such facts are as common to a marital relationship as they are to a partnership. Further, whatever testimony that is adduced as to the agreement itself is necessarily self-serving.

Proof as to the fourth element of the partnership—the division of profits—is also insufficient to show the existence of a bona fide partnership. In fact, there was no proof whatsoever that the taxpayers agreed to divide and did in fact distribute the profits of the farming enterprise. The fact that the account books fail to show any division of profits between the taxpayers creates an inference that the taxpayers never intended to so

[12] Sec. 178.10, Stats.

[13] Sec. 178.04 (2), Stats.; *Anderson v. Anderson, supra.*

distribute said profits. Similarly, the joint account into which all receipts, farm and other income were deposited is consistent with the relationship the taxpayers intend —that of marriage and not of partnership.

Consistent with our finding that the relationship in question was not a bona fide partnership, we likewise hold that their relationship failed to qualify as a joint venture because of the scope and period of time which such relationship encompasses.[14]

The taxpayer was assessed additional taxes by the Department of Revenue because it believed that the farm-related income split by the taxpayers on their Wisconsin return was attributable solely to Mr. Skaar. This was because the department determined the business relationship not to be that of partnership, but of a sole proprietorship. In *Woller v. Department of Taxation* (1967), 35 Wis. 2d 227, 151 N. W. 2d 170, we held that the burden of proof was upon the taxpayer to show the additional assessment to be erroneous. Based upon the evidence adduced at the administrative hearing, the W.T.A.C. concluded that a partnership did not exist and that the taxpayers had not met their burden of proof. We think the facts upon which the commission's conclusion of law was based are clearly supported by substantial evidence in view of the record submitted.

The respondents raised multiple issues in their brief of which an answer was not required so as to decide the controlling question involved. We have not deemed such questions inappropriate. We likewise do not subscribe to the wisdom of income tax treatment of married persons in Wisconsin. We would prefer the federal system as it applies to married individuals. However, that is a matter for the legislature.

---

[14] *Cf. Insurance Co. of North America v. ILHR Department* (1970), 45 Wis. 2d 361, 173 N. W. 2d 192; *Estate of Starer* (1963), 20 Wis. 2d 268, 121 N. W. 2d 872; *Bowers v. Treuthardt* (1958), 5 Wis. 2d 271, 92 N. W. 2d 878.

We conclude that on the facts of this case the taxpayers have failed to establish that they have in fact formed a bona fide partnership.

*By the Court.*—Judgment is reversed and cause remanded with directions to affirm the decision of the Wisconsin tax appeals commission.

BEILFUSS, J. *(dissenting)*. I respectfully dissent and believe the judgment of the circuit court should be affirmed.

Mr. and Mrs. Skaar, just like any other taxpayer, have a right to report their income for tax purposes in a manner most advantageous to them, provided, of course, their report is consistent with the truth.

I fully agree with the majority that:

". . . transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny." *Commissioner v. Tower* (1946), 327 U. S. 280, 291, 66 Sup. Ct. 532, 90 L. Ed. 670.

As I review the record, the facts do not lead to the conclusion that Mr. and Mrs. Skaar were attempting by design or artifice to create records or impressions for the purpose of avoiding the tax laws. Their everyday activities demonstrate their intention as clearly, if not more so, than a formal lawyer-like agreement.

As observed by the circuit court:

"Mrs. Skaar does a very substantial amount of farm labor each day. Twice a day she participates in the milking and feeding of the herd; takes care of the chickens; bales hay, drives the baler, and unloads hay; prepares the tobacco seed bed, planting the plants, helps with the tobacco harvest and with the stripping; and drives tractors. She estimated that probably she puts in 12 hours per day doing farm labor. Mr. Skaar is town chairman and chairman of the county drainage board which duties take him away from the farms considerably so she probably puts in more farm labor than he does. The commission, by its Finding of Fact No. 8, found that

Mrs. Skaar 'spent as much time or more than did the petitioner in the conduct of the farming operations.'

"Decision making in the management of the farms is done jointly by the Skaars after talking things over, such as buying new machinery, or when to sell the tobacco crop.

"The sale of milk constituted by far the greater portion of the gross farm income of the Skaars for each of the three years in question as shown by the income tax returns. In 1966 it accounted for $24,666.07 of a total of $33,884.95; in 1967, $28,551.83 of a total of $35,417.38; and in 1968, $32,733.22 of a total of $40,606.23. During these three years, and for some time prior thereto, the milk checks received have been payable to both Mr. and Mrs. Skaar with an 'or' between their names. These as well as all other farm income are deposited in the one joint checking account. On the other hand, the checks for sale of cattle are made out to him. Bills for farm expenses most generally came made out to Mr. Skaar alone but Mrs. Skaar pays them."

The circuit court then concluded in its memorandum opinion:

"If the arrangement between Mr. and Mrs. Skaar was not technically a partnership, then no partnership information return probably was required because sec. 71.10 (3) (a), Stats., does not appear to cover joint ventures. In any event, the Skaars employed an attorney to prepare their income tax returns for the three years in question and it was his judgment, not theirs, which resulted in not filing partnership returns. It would be wholly unreasonable for the Commission to infer from such failure that the Skaars were not engaged in a joint venture whereby they were equal co-owners of all income derived from such venture.

"The Court finds that no rational basis exists for the Commission's legal conclusion that the Skaars did not conduct their farming operations either as a partnership or a joint venture."

I agree and would affirm.

I am authorized to state that Mr. Justice ROBERT W. HANSEN joins in this opinion.