McManus, Petitioner-Appellant, v. Department of
Revenue, Respondent.

Supreme Court

*No. 77–100.  Argued September 11, 1979.—Decided October 9, 1979.*
(Also reported in 283 N.W.2d 576.)

For the appellant there was a brief and oral argument by *W. Dan Bell, Jr.,* of Madison.

For the respondent the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. This is an income tax case which poses the problem of the proper allocation of income and losses from jointly owned property. The question pre-

sented is whether a taxpayer who is a joint tenant with his wife in the ownership of a farm, the income of which is derived almost exclusively from rental payments and federal subsidies for keeping land out of production, can deduct all the farm losses on his personal state income tax return. We conclude he cannot, because rental income and federal payments similar to rent are attributable to a co-owner in proportion to ownership. Losses derived from property devoted to rental income can be claimed by a taxpayer only in the same proportion.

In this case the Department of Revenue made an additional assessment of income taxes against the taxpayer, Jack McManus, for the years 1969–1972, based upon the disallowance of a portion of the deduction claimed for farm losses. The portion of the losses which were disallowed were proportional to the taxpayer's wife's share of the farmland held in joint tenancy.

The taxpayer petitioned the Department of Revenue for abatement of the additional income tax assessment. Upon the denial of abatement, he appealed to the Wisconsin Tax Appeals Commission. The Commission affirmed the Department's denial of the taxpayer's petition for abatement. Under ch. 227, Stats., review was brought to the circuit court for Dane county, which affirmed the Commission's decision. The appeal is from the circuit court's judgment. We affirm.

The facts are undisputed. Accordingly, only an issue of law is presented on this appeal.

The taxpayer, Jack McManus, and his wife, Dorothy, owned farmland in Dane county. Part of the contiguous tract was solely owned by the taxpayer, but a substantial portion of the farm was in the joint ownership of the taxpayer and his wife. The taxpayer contributed all of the money used to purchase the farmland. The taxpayer and his wife lived on the farm. This case is concerned only with the allocation of losses arising from the portion of the farm that is jointly owned.

The gross income from the farm, with the exception of less than five percent from a beef cattle operation, came from cash rentals and federal-program payments designed to keep land out of production. Farm losses during the period 1969–1972 exceeded income. The taxpayer, relying upon the rule of *Skaar v. Department of Revenue*, 61 Wis.2d 93, 211 N.W.2d 642 (1973), claimed all of the farm losses on his personal Wisconsin income tax return.

The additional assessments made by the Department of Revenue were based on the theory that the farm income came from the land ownership, not from farm operations. Because of this factual distinction, the Department concluded that *Skaar* was not applicable. It is acknowledged by all parties that, under the rationale of *Skaar*, irrespective of the existence of a joint tenancy, where one spouse operates the farm as a sole proprietorship, all gains or losses resulting from farm operations are attributable to that spouse.

The taxpayer seeks to come under the umbrella of *Skaar* and asserts that, under *Skaar*, he properly claimed all the farm losses on his own income tax return. The Department, however, distinguishes *Skaar* from the case before us. Unlike the issue in the present case, the principal issue in *Skaar* was whether there was a partnership of the spouses. In *Skaar*, the income of the farm was the result of actual farm operations. The McManus farm income, except for minor portions not in controversy, came exclusively from rental of farmland and from contracts with the federal government which paid the landowners for withholding the land from specified types of production.

The Department's theory is simply that, where the gross income is derived from the landownership, as contrasted to the active operation and management of the land, the allocation of income and the right to take losses for income tax purposes must, under the common

law and statutory law, follow in proportion to the ownership of the joint tenants.

While the taxpayer disagrees with this fundamental position, he also makes two distinctions which would make the Department's position inapplicable to the present situation, although that general proposition be correct. McManus states that, although the rule asserted by the Department might be correct in respect to rental income from non-owner-occupied property, it has no application to a situation such as this, where the taxpayer and his wife live on the farm. The taxpayer offers neither reasoning nor precedent in support of that argument, and we conclude that it is a distinction without a difference. If the rule is applicable to non-owner-occupied property, it is equally applicable to owned property which is in part occupied by the taxpayer's home. The taxpayer's distinction is founded upon no relevant legal difference.

McManus also asserts that, whatever the rule may be in respect to the taxation of joint property generally, that rule is inapplicable here. He admits that he put the property in joint tenancy with his wife at the time of purchase with his own funds, but argues that he did not intend joint ownership. He states in the narrative summary incorporated in the appendix to his brief:

"Mrs. McManus' name does appear on the title to certain portions of the land because I was stupid and unknowledgeable. . . . I dispute that she has any ownership in the land."

This argument flies in the face of the Wisconsin statutes which control the creation of joint tenancies and the relationship of joint tenants between or among themselves. Sec. 700.17 (2), Stats., provides:

"(2) CHARACTERISTICS OF JOINT TENANCY. Each of 2 or more joint tenants has an equal interest in the whole property for the duration of the tenancy, irrespective of unequal contributions at its creation. . . ."

Sec. 700.19, Stats., provides that a husband and wife who are named as owners of real estate in a document of title are joint tenants unless the intent not to create tenancy in common is clearly expressed. Irrespective of McManus' personal reservations about the nature of the co-tenancy, it is undisputable that a joint tenancy was created under Wisconsin law. Dorothy McManus "has an equal interest in the whole property" with the taxpayer.

We conclude that the Department of Revenue correctly treated the property as being in joint tenancy, and the rules applicable to the allocation of income or losses in respect to joint tenants must be followed.

The Department's position is supported by numerous decisions which uniformly hold that gains or losses from the sale or rental of property must be divided between joint tenants in proportion to their respective ownership shares. *See, Bleil v. Department of Revenue,* 10 W.T.A.C. — (1975) (1977 Wis. C.C.H. sec 12–101.702); *Moberly v. Department of Revenue,* 9 W.T.A.C. 202 (1972); *Wolf v. Department of Taxation,* 6 W.B.T.A. 234 (1967).

While the decisions of the Tax Appeals Commission may be persuasive, they are not precedents for this court. They are entitled to weight in accordance with the experience, technical competence, and specialized knowledge of the agency. When, however, those holdings lack a detailed explication of the law and facts and do not demonstrate a reasoned basis for decision, they are of little persuasive value.

The cases relied upon by the Department do not reveal an explained or reasoned basis for decision. The

cited cases of the Tax Appeals Commission are, however, clearly correct, for they are based upon the common law and the statutorily codified incidents of ownership which arise out of a joint tenancy. As sec. 700.17, Stats., *supra*, provides, the interest of each joint tenant in the whole property is equal. It is basic property law that one of the incidents of ownership in a joint tenancy is the right to share equally in the income from rent or from the proceeds of a sale. Thompson, *Real Property*, Vol. 4, sec. 1804, at 182–87 (1979 replacement ed.); Burby, *Real Property*, at 233 (3d ed. 1965); 55 Marq. L. Rev. 323 (1972). Dorothy McManus was therefore entitled to share equally with her husband in the enjoyment and possession of any income derived from the rental of the property.

Conceding *arguendo* that ordinary rents are allocable in that manner, the taxpayer apparently contends that income derived from federal programs which subsidize farmers to keep land out of production should be treated as something other than rent. While the argument is not specifically made, it appears to be the contention of McManus that, under the circumstances here, where he was in charge of allocating the use of the property and he personally executed contracts with the federal agencies, the payments are akin to revenue from operations and, hence, under the rule of *Skaar*, both the income and losses would be allocable to him as the operator of the farmland.

Both the Commission and the trial court found that the federal-land-program payments were made to keep the specified acreage out of production. The effect of the agreement with the federal government was to deprive the landowners, during the contract period, of the right to put their land to certain crop-production uses. Under the contract the landowner gave up the right to make

unrestricted use of the land. During the period of the contract, the federal government had the authority to police the use of the land to insure that the conditions under which the payments were made were not violated. While not identical to rent, we deem this relationship to be closely analogous to the rental of land to the federal government. We conclude that the income from those contracts must be allocated to the joint tenants, as are ordinary rentals.

The same conclusion was reached in *Metcalf v. Department of Revenue*, 7 W.T.A.C. 178 (1968). While *Metcalf* did not fully explain the Commission's conclusion in determining that federal agricultural-land-program payments were to be treated as rent, it is clear that it did so. In that case spouses who owned a farm in joint tenancy sought to split their income by claiming partnership status. The partnership status was disallowed on the abatement application, but the Department reduced its assessment and made a refund to the wife to reflect her half share as a joint tenant in the federal subsidy payments received to keep the land out of production. The result of *Metcalf* was to split the federal subsidy income between the joint tenant spouses, but to attribute all the farm *operation* income to the husband. While the taxpayer seeks to avoid the holding of *Metcalf* on the ground that it stands alone and is inconsistent with other Commission decisions, this assertion is incorrect. In none of the decisions pointed out by the taxpayer— *Habelman v. Department of Revenue*, 9 W.T.A.C. 257 (1972) ; *Fenske v. Department of Taxation*, 6 W.B.T.A. 226 (1967) ; *Nelson v. Department of Taxation*, 6 W.B.T.A. 132 (1966)—does the opinion make clear the nature of the government program involved, nor was consideration given expressly to the nature of the ownership. In each of the cases the determination was made merely upon the finding that income splitting was im-

proper, because the spouses were engaged in neither a joint venture nor a partnership. *Metcalf's* conclusion is persuasive because it is correct, and its correctness stems from the inherent nature of a joint tenancy and the similarity of federal subsidies for keeping land out of production to payments received as rent.

We therefore conclude that, as an incident of joint tenancy, rents and income in the nature of rents, as well as losses, must be attributed to the joint tenants in equal amounts. The taxpayer was entitled to his proportionate share of whatever income accrued from rents, and the losses he could take were limited to his proportionate ownership.

The taxpayer also asserts that the Department is without the necessary express statutory authority to allocate rental income from jointly held land in a manner different from which it allocated operational income derived from land similarly owned in *Skaar, supra.*

We see the *Skaar* situation as factually unrelated to the present one. Under the common law and the statutes, income derived from ownership, per se, must flow to each owner in proportion to the interest held. Income from farm operations, in the absence of a bona fide partnership, must be attributed to the operator irrespective of whether the property is owned individually, leased from another, or jointly held, as in *Skaar.*

There is no inconsistency between the Department's position in *Skaar* and that taken in respect to the present taxpayer. The Department in each case has the express statutory authority to levy income taxes against an individual's federal adjusted gross income. The ultimate question in each case is whose income is it.

In *Skaar* and in this case, the assessment was made on federal income tax principles under which an individual's

gross income includes any "accessions to wealth" (*Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430–31 (1955)), "from whatever source derived" (26 U.S.C.A. sec. 61). In *Skaar*, the husband-taxpayer's gross income was held to be derived from his operations of the entire farm. In this case it was derived only from his ownership of a joint tenant's share of the real estate.

Rental income must be attributed to a joint tenant in proportion to ownership. It is the income of that joint tenant only. Even transfer of the right to receive income from property does not in itself relieve a taxpayer of liability in the absence of the divestiture of the source of the income. *Lucas v. Earl*, 281 U.S. 111 (1930) ; *Galt v. Commissioner*, 216 F.2d 41 (1954).

The rental income of the taxpayer and his wife, although derived from the same property, constituted divisible income allocable to each of them in proportion to their ownership rights. The losses could be claimed by each of them only in the same proportion. Accordingly, the taxpayer was entitled to claim losses only in proportion to his ownership of the property.

*By the Court.*—Judgment affirmed.