BEY, by Guardian *ad litem,* and others, Respondents, v. TRANSPORT INDEMNITY COMPANY, INC., and another, Appellants.

*March 2—March 31, 1964.*

For the appellants there were briefs by *Kivett & Kasdorf,* attorneys, and *H. A. Dall* of counsel, all of Milwaukee, and oral argument by *Mr. Dall.*

For the respondents there was a brief by *Donald Gorectke* of Milwaukee, attorney, for Patricia Bey and Louise Mormon, and by *Gerald Denneberg* of Milwaukee, attorney, for Brenda Bey, and *Ted Warshafsky* and *Michael I. Tarnoff* of counsel, both of Milwaukee, and oral argument by *Mr. Warshafsky.*

WILKIE, J. Three issues are raised on this appeal. The first is as follows: *Under the circumstances of this case, was the truck driver, Leo Wilant, negligent as a matter of law with respect to lookout, and failure to yield the right-of-way to a pedestrian?*

The appellants argue in effect that the trial court had no basis for finding the driver, Wilant, "negligent" as a matter of law in any respect. Moreover, appellants contend that, by finding Wilant "negligent in the manner in which he proceeded to cross the sidewalk" as a matter of law, without specifying the precise items of negligence, and further instructing the jury as to the standards to apply when determining whether a party *is* negligent in some respect, the trial court's findings and instructions in combination make it impossible to evaluate whether the jury's determinations of *causal* negligence and the apportionment of such causal negligence are based upon credible evidence.

We conclude that the evidence supports a determination by the trial court that Wilant was negligent as a matter of law

with respect to both lookout and failure to yield the right-of-way.

It is clear that Wilant stopped his truck at a point south of the sidewalk some three feet. From this position his view to the right was totally obstructed by the building on the southeast corner of the intersection. According to his own testimony, he looked to the right, then to the left. His view to the left was unobstructed. He then proceeded across the sidewalk toward the apron of the driveway. The evidence indicates that the collision between the truck and bike occurred on the sidewalk between the driveway and apron. An eyewitness, Mrs. Rutherford, observed the collision from a point 13 feet to the right of the intersection of the driveway and sidewalk. She had been walking on Atkinson in the same direction the Bey girls were traveling. She observed the vehicle come onto the sidewalk and strike the bicycle. She testified that the truck attempted to go forward after the collision, but was unable to move because the bicycle was lodged under the front axle of the truck. She called to the driver to stop. He looked to his right, saw her, and immediately stopped the vehicle.

Wilant testified that he stopped his vehicle at a point about three feet south of the driveway. He looked to his right, then to his left, and proceeded toward the sidewalk, planning to make a right-hand turn onto Atkinson. When he looked to his right again, he saw some women waving at him. He stopped the truck and dismounted. He observed the two girls. One was lying on the apron of the driveway, a few inches from his front bumper. The other was lying adjacent to the right front wheel of the vehicle, partially on the sidewalk, and partially on the grassy boulevard between the north edge of the sidewalk and the curbline. Wilant testified that his front wheels were on the north edge of the sidewalk, touching upon the apron of the driveway leading into the street. The bicycle was lodged under the front axle,

about in the middle of the truck. Although Wilant testified that he did not feel any impact, his testimony acknowledging that he crossed the sidewalk, and his testimony as to his position on the sidewalk after heeding the warnings of the women on the street, when coupled with Mrs. Rutherford's testimony, clearly indicates that the collision occurred on the sidewalk.

One witness, Dennis Bartz, testified that the accident occurred about one foot south of the intersection of the driveway and sidewalk. However, the trial court could disregard his testimony, believing it to be inherently incredible. Bartz made his observations while crouching in the showcase of a drugstore, almost directly on line with the intersection of the driveway and sidewalk, and 200 feet north of this intersection. From this position, about four feet above street level, the difference in angles between a point one foot south of the driveway, and a point several feet north of the driveway could not be perceived in depth. Bartz's testimony is equivalent to the testimony of a person crouching hands on knees on "his" 35-yard line, and claiming that he could perceive whether another person was "stopped" on the one-yard line or had "scored a touchdown" in the far-end zone.

Since all the credible testimony established that Wilant stopped his truck at a point where his view to the right was obstructed by a building, and then proceeded onto the sidewalk without stopping again, striking the toy bike approaching from his right, the court could properly find him negligent as a matter of law as to lookout and failure to yield the right-of-way to a pedestrian.

This court has held that a driver who stops at an intersection and finds his vision, either left or right, obscured by some obstruction must move into a position where he can efficiently observe traffic crossing his path, stop *again,* and make an effective observation in either direction. Failure to act in this manner, is negligence as a matter of law.

" ' "One must look at a point where his observation will be efficient for protection." . . . One may not drive recklessly into a zone of possible danger and then, after he has been injured or has caused injury, be heard to say that a condition or circumstance that he did not see or look for might possibly have excused his conduct.' " [1]

Wilant was unable to make any efficient observation to his right from a point three to five feet south of the intersection. He did not stop at the south edge of the sidewalk and make an observation to his right at that point, but rather he proceeded directly across the sidewalk. Wilant acknowledged that he never saw the girls, prior to the collision. Under these circumstances such conduct always creates a probable risk of harm. Clearly these negligent aspects of his course of conduct were a cause-in-fact of the injury-producing collision.

Moreover, by proceeding across the sidewalk at the time the Bey girls were crossing his path, he failed to yield the right-of-way to a pedestrian as required by secs. 346.28 (2) [2] and 346.47 (1), Stats. [3]

The appellants argue that these provisions are not applicable here because the Bey girls were not "afoot" and, therefore, were not "pedestrians" within the meaning of sec. 340.01 (43), Stats. [4]

---

[1] *Crye v. Mueller* (1959), 7 Wis. (2d) 182, 189, 96 N. W. (2d) 520. See also *Bowers v. Treuthardt* (1958), 5 Wis. (2d) 271, 92 N. W. (2d) 878.

[2] "346.28 (2) Operators of vehicles shall yield the right of way to pedestrians on sidewalks as required by s. 346.47."

[3] "346.47 (1) The operator of a vehicle emerging from an alley or about to cross or enter a highway from any point of access other than another highway shall stop such vehicle immediately prior to moving on to the sidewalk or on to the sidewalk area extending across the path of such vehicle and shall yield the right of way to any pedestrian and upon crossing or entering the roadway shall yield the right of way to all vehicles approaching on such roadway."

[4] "340.01 (43) 'Pedestrian' means any person afoot."

The separate provisions of the Motor Vehicle Code must be construed in relation to the basic purposes of the code as a whole, and in relation to other specific provisions of sec. 340.01 and ch. 346, Stats.[5] Keeping in view that the Motor Vehicle Code represents the efforts of reasonable men pursuing reasonable objectives in a reasonable manner, we conclude that children riding a toy bicycle, in distinction to a statutory bicycle,[6] on the sidewalk, are "pedestrians" within the meaning of secs. 346.28 (2) and 346.47 (1).

The purpose of sec. 346.47 (1), Stats., is not only to provide some rule to establish the order of movement at a driveway-sidewalk intersection, but also to provide maximum protection to the party who would most probably sustain serious injury if uncertainty as to right-of-way resulted in collision. Moreover, the statute insures that those persons who utilize the sidewalk as their main conduit for movement can go about their activities without having to constantly anticipate impending danger. Children riding toy bicycles (bicycles with a wheel diameter less than 20 inches) on the sidewalk, are persons within the protection of the statute.

Given a collision, it is probable that the children will sustain serious injury as the circumstances of the instant case verify. Moreover, a toy bicycle can only be legally operated on the sidewalk in the light of provisions of sec. 346.78, Stats.[7] Therefore, the sidewalk is the legal, as well as the natural area, in which children may play with such an instrument. Children may operate such a bike on the side-

[5] *Drake v. Farmers Mut. Automobile Ins. Co.* (1963), 22 Wis. (2d) 56, 125 N. W. (2d) 391.

[6] "340.01 (5) 'Bicycle' means every device propelled by the feet acting upon pedals and having wheels any 2 of which are more than 20 inches in diameter."

[7] "346.78 PLAY VEHICLES NOT TO BE USED ON ROADWAY. No person riding upon any coaster, roller skates, sled, toboggan or toy vehicle shall attach the same or himself to any vehicle upon a roadway or go upon any roadway except while crossing a roadway at a crosswalk."

walk exercising reasonable care for their safety, rather than being required to maintain a constant tense vigil for traffic crossing the sidewalk from adjoining alleys.

Because Wilant did not stop his "vehicle immediately prior to moving on to the sidewalk," [8] but rather moved directly onto the sidewalk after stopping at a point three to five feet south of the intersection where his vision was obstructed to his right, he failed to yield the right-of-way to the Bey girls, who were "pedestrians" within the meaning of secs. 346.47 (1), 346.28 (2), and 340.01 (43), Stats. Such conduct was a cause-in-fact of the collision.

While it is better practice for a trial court to specify the precise items of negligence, when making such a finding as a matter of law, the failure to do so here is not error, in light of the fact that the evidence justified a determination of negligence *per se* as to all items raised at the trial.

Under all the circumstances present, the apportionment of negligence was within the range of reasonable determination.

Issue 2. *Under the circumstances of this case, did the trial court commit prejudicial error in refusing to instruct the jury that the driver had the right to assume, and act upon such assumption, that users of the sidewalk would obey the rules of the road?*

Under the circumstances of this case, the trial court did not err in refusing to instruct the jury that the driver, Wilant, had the "right to rely" upon the assumption that pedestrians traveling on the sidewalk would observe the rules of the road.

The trial court found the Bey girls "negligent" as a matter of law.

In his specific instructions relating to the standards to apply in determining specific items of negligence, he instructed the jury as to the prohibitions against operating a vehicle "when it is so loaded or any person so situated as to obstruct

---

[8] Sec. 346.47 (1), Stats., *supra.*

the view of the operator to the front or to the side, or as to interfere with the operator having free use of both hands and feet to the operating mechanism or controls of the vehicle." This instruction was predicated on sec. 346.88, Stats.[9] For the purposes of this statute, a toy bike such as that driven by the Bey girls is a "vehicle." The court's other instructions related to all other possible items of negligence on the part of the girls raised by the evidence. Therefore, the refusal to submit the "right to rely" instruction did not affect the assessment of the *plaintiffs'* negligence.

Appellants implicitly argue, however, that the *"right to rely"* instruction was relevant on the issue of the *driver's* negligence. Wilant's obligation to maintain an efficient lookout from a point where his view was unobstructed, and his duty to yield the right-of-way to pedestrians as defined in sec. 346.47 (1), Stats., could not be lessened by an assumption that users of the sidewalk would obey the rules of the road, and more specifically, that children playing on a toy bike would not violate the provisions of sec. 346.88—relating to obstructing the operator's view or driving mechanism, or would not drive at unreasonable speeds, the only rules of the road relevant here.

It is unreasonable to suggest that an operator of a $4\frac{1}{2}$-ton truck may drive out of a blind alley onto a sidewalk, calmly assuming that unobserved pedestrians will somehow "conform to the rules of the road," and hence avoid collision. In the posture of this case, the right to rely and proceed on the reliance would vitiate any other duty of the driver. To give this instruction on these facts would have been misleading.

---

[9] "346.88 OBSTRUCTION OF OPERATOR'S VIEW OR DRIVING MECHANISM. (1) No person shall drive a vehicle when it is so loaded or when there are in the front seat such number of persons, or any persons so situated, as to obstruct the view of the operator to the front or to the sides or as to interfere with the operator having free use of both hands and feet to the operating mechanisms or controls of the vehicle."

Issue 3. *May the trial court direct a money judgment against the defendants on behalf of a guardian ad litem for fees?*

The trial court's judgment of May 31, 1963, directed that :

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED: That the Guardian *ad Litem,* Dominic H. Frinzi, do have and receive judgment against the defendants, Transport Indemnity Co., Inc. and General Expressways, Inc., in the sum of Five Hundred ($500) Dollars, as and for Guardian fees."

Sec. 271.04 (2), Stats.,[10] provides that guardian *ad litem* fees be treated "as taxable costs recoverable by a successful litigant." [11] Therefore, the trial court should not have ordered a direct money judgment against the appellants on behalf of the guardian *ad litem* for this amount. Rather, the judgment should have provided that this sum be recovered by the plaintiffs as an item of taxable costs with further directions to the clerk of court to pay this sum directly to the guardian *ad litem.*

*By the Court.*—Modified so as to provide that payment of guardian *ad litem* fees be recovered by plaintiffs as an item of taxable costs and, as so modified, affirmed.

---

[10] "271.04 ITEMS OF COSTS. When allowed costs shall be as follows: . . . (2) *Disbursements.* All the necessary disbursements and fees of officers allowed by law, the suit tax, the compensation of referees, guardian *ad litem* fees, a reasonable disbursement for the service of process or other papers in an action when the same are served by a person authorized by law other than an officer, but in no event shall such item exceed the authorized sheriff's fee for the same service, amounts actually paid out for certified copies of papers and records in any public office, postage, telegraphing, telephoning, adverse examinations including copies, express or for plats and photographs, not exceeding $50 for the last two items, $25 for expert witness fees, and in actions relating to or affecting the title to lands, the cost of procuring an abstract of title to such lands."

[11] *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 358, 99 N. W. (2d) 163.