TRALMER SALES & SERVICE, INC., a Wisconsin Corporation, Plaintiff-Appellant,

v.

Daniel M. ERICKSON , Sandra Erickson, and Daniel M. Erickson and Sandra Erickson, Husband and Wife, and in Relation to Their Marital Property, Defendants-Respondents.

Court of Appeals

*No. 92–2838. Submitted on briefs July 9, 1993.—Decided July 28, 1994.*

(Also reported in 521 N.W.2d 182.)

550

552

553

554

For the plaintiff-appellant the cause was submitted on the brief of *Paul W. Henke, Jr.* and *Nicholas Bykowsky* of *Moen, Sheehan, Meyer & Henke, Ltd.* of La Crosse.

For the defendants-respondents the cause was submitted on the brief of *Richard J. Heitman* of *Rice & Heitman, S.C.* of Sparta.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. Section 815.18, STATS., allows debtors to claim certain property as exempt from exe-

cution.[1] This case involves a judgment creditor's challenge to the debtors' claim that property comes within the business property exemption, § 815.18(3)(b).

Tralmer Sales and Service, Inc., a judgment creditor, appeals from an order classifying certain goods seized from Sandra and Daniel Erickson, the judgment debtors, as business property within the meaning of § 815.18(3)(b), STATS.; denying Tralmer's motions to prohibit the Ericksons from amending their claim for business and consumer exemptions under § 815.18(3)(b) and (d); and denying Tralmer's motion to appoint a receiver. The issues are whether the trial court properly (1) concluded that the Ericksons' bed-and-breakfast operation was[2] a business, under § 815.18(2)(b), and that some of the goods seized were business property, (2) allowed Ericksons to amend their claimed exemptions and (3) refused to appoint a receiver. We affirm in part and reverse in part.

## I. BACKGROUND

The Ericksons own their home in Tomah, Wisconsin. In 1990, Sandra obtained a state permit to operate a bed and breakfast, the "Victoriana," in their home. Tralmer, a building contractor, provided home-improvement labor and materials to the Ericksons in 1990 and 1991. The Ericksons failed to pay the balance due Tralmer. In December 1991, Tralmer took judgment against them for $11,637.23. In March 1992, the county sheriff levied execution on goods in the Ericksons' home.

---

[1] 1989 Wis. Act 278, § 9 repealed and recreated § 815.18, STATS., in essentially its present form.

[2] Sandra testified that the seizure of property put her out of business.

In April 1992, the Ericksons affirmatively claimed[3] that all the items seized were exempt from execution, some as business property under § 815.18(3)(b), STATS., and the rest as consumer goods under § 815.18(3)(d).[4] They requested an appraisal of the property under § 815.19(1), STATS., and received it in June. In early July, they moved for an order determining their right to the claimed exemptions.

While the judgment was still unsatisfied Sandra sold and gave away some unseized property still in their possession. In late July, Tralmer moved the court to appoint a supplementary receiver to exercise control over the goods still in the Ericksons' possession and to prohibit them from amending the claim they had filed in April. In August, the Ericksons amended their claim of exemptions, asserting that some items they originally claimed as exempt consumer goods were actually exempt business property and some items they origi-

---

[3] Section 815.18(6), STATS., the claim provision, provides in relevant part:

> (a) A debtor shall affirmatively claim an exemption or select specific property in which to claim an exemption. The debtor may make the claim at the time of seizure of property or within a reasonable time after the seizure, but shall make the claim prior to the disposition of the property by sale or by court order. Exempt property is not exempt unless affirmatively claimed as exempt.

[4] Section 815.18(3), STATS., provides in relevant part:

> The debtor's interest in or right to receive the following property is exempt, except as specifically provided . . .:
>
> (b) *Business and farm property*. Equipment . . . used in the business of the debtor or the business of a dependent of the debtor, not to exceed $7,500 in aggregate value.
>
> . . . .
>
> (d) *Consumer goods*. [T]angible personal property held primarily for the personal, family or household use of the debtor or a dependent of the debtor, not to exceed $5,000 in aggregate value.

nally claimed as exempt business property were actually exempt consumer goods. The sheriff has not sold or disposed of the seized property.

Following hearings in September, the trial court: (1) concluded that the Ericksons were entitled to claim business property exemptions because the Victoriana was a business; (2) determined that some seized items were business property and the rest were consumer goods; (3) denied Tralmer's motion to prohibit the Ericksons from amending their claimed exemptions; (4) denied Tralmer's motion to appoint a receiver; and (5) required the Ericksons to designate and select their claimed exemptions within ten days of the last hearing. They did so, claiming as exempt $9,862.50 worth of consumer goods and $14,707.50 worth of business property.[5] Tralmer appeals.

## II. BUSINESS PROPERTY EXEMPTION UNDER § 815.18(3)(b), STATS.

### A. Victoriana a Business

We begin our discussion by acknowledging the legislature's charge to the courts in § 815.18(1), STATS.: "This section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property

---

[5] Section 815.18(8), STATS., provides in relevant part:

Each spouse is entitled to and may claim the exemptions under this section. If the property exempt under this section is limited to a specified maximum dollar amount, each spouse is entitled to one exemption. That exemption is limited to the specified maximum dollar amount, which may be combined with the other spouse's exemption in the same property or applied to different property included under the same exemption.

necessary to sustain life and the opportunity to avoid becoming public charges."

The direction in § 815.18(1), STATS., is consistent with judicial decisions over the years requiring a liberal construction of the exemption laws in favor of the debtor.

> It is well settled that exemption laws must have a liberal construction, within the limits contemplated by the legislature, so as to secure their full benefit to the debtor, in order to advance the humane purpose of preserving to the unfortunate or improvident debtor and his family the means of obtaining a livelihood and thus prevent him from becoming a charge upon the public.

*Julius v. Druckrey*, 214 Wis. 643, 649-50, 254 N.W. 358, 361 (1934) (citations omitted).

As our state supreme court noted over a century ago, "The principle of all exemption laws in this state is very clearly expressed in the constitution itself. 'The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale . . . .' " *Russell v. Lennon*, 39 Wis. 570, 573 (1876) (quoting WIS. CONST. art. I, § 17).[6]

A debtor may claim as exempt from execution up to $7500 worth of business property used in the debtor's business. Section 815.18(3)(b), STATS. Tralmer contends that the Victoriana was not a business. The exemption statute defines a business in relevant part as "any lawful activity . . . conducted primarily for the

---

[6] In 1848, the framers of the Wisconsin Constitution deemed the debtor exemption important enough to include it in the Declaration of Rights. See WIS. CONST. art. I, § 17.

. . . rental of property . . . or for the sale of services."
Section 815.18(2)(b).

Whether, as the trial court held, the Victoriana
was a business requires application of the statutory
definition to the facts. That application raises an issue
of law. We decide the proper application of the defini-
tion without deference to the trial court's conclusion.
*Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758,
300 N.W.2d 63, 68 (1981). The trial court made no
explicit findings to support its conclusion that the
Victoriana was a business. However, we may assume
that it decided the missing findings consistently with
its order. *Sohns v. Jensen*, 11 Wis. 2d 449, 453, 105
N.W.2d 818, 820 (1960).

It is undisputed that the Ericksons provided
accommodations for overnight guests, a lawful activity.
We next determine whether that activity was "con-
ducted primarily for the . . . rental of property . . . or for
the sale of services," within the meaning of
§ 815.18(2)(b), STATS. We therefore identify the purpose
of the activity. The undisputed evidence shows that the
sole purpose of providing accommodations was for
rental of property or sale of services.

We assume that the trial court's implied findings
are consistent with Sandra's uncontradicted testimony
and the Ericksons' documentary evidence. Sandra tes-
tified that she opened the Victoriana with the intention
of making a profit. She obtained an operating license
from the state[7] and a transient room permit from the

---

[7] Section 50.57(1)(a), STATS., authorizes the Department of
Health and Social Services to administer laws and rules relat-
ing to bed-and-breakfast establishments. WISCONSIN ADM. CODE
§ HSS 197.04(1), provides, "Before opening for business, every

City of Tomah. She paid room taxes to the city. She secured a state seller's permit, collected and paid sales tax and filed sales and use tax returns. She joined the chamber of commerce and several innkeeper and bed-and-breakfast associations. The Ericksons advertised the Victoriana. In 1991, a total of 136 guests stayed at the Victoriana on thirty-two nights. Typically, rooms rented for forty-five to fifty-five dollars per night. In 1990 and 1991, the Ericksons filed a business schedule with their federal tax return, listing the income from and expenses for the Victoriana.[8]

We affirm the trial court's conclusion that the Victoriana was a business.

### B. Partnership or Sole Proprietorship

Tralmer argues that if the Victoriana was a business, it was a partnership consisting of Sandra and Daniel, and therefore the Ericksons cannot claim business exemptions under § 815.18(3)(b), STATS. Section 815.18(3)(b) allows a debtor to exempt up to $7500 worth of business property used in the business of the "debtor." Section 815.18(2)(c) defines a debtor as "an individual;" the definition excludes a partnership.

Because the exemption statute does not define a partnership, we look to ch. 178, STATS., the Uniform Partnership Act, for guidance. That act defines a partnership as "an association of 2 or more persons to carry on as co-owners a business for profit." Section

---

bed and breakfast establishment shall obtain a permit from the department . . . ."

[8] One return shows a $23.58 profit while the other shows a loss. But, as the trial court noted, § 815.18(2)(b), STATS., does not require that an activity be profitable to qualify as a business.

178.03(1), STATS. Case law establishes the elements the contracting parties must satisfy to create a partnership. The parties must (1) intend to form a bona fide partnership and accept the accompanying legal requirements and duties, (2) have a community of interest in the capital employed, (3) have an equal voice in the partnership's management, and (4) share and distribute profits and losses. *Skaar v. DOR*, 61 Wis. 2d 93, 98-99, 211 N.W.2d 642, 645 (1973), *cert. denied*, 416 U.S. 906 (1974). If any of the four elements is not satisfied, the parties have not created a partnership.

Because it claims that a partnership exists, Tralmer bears the burden of proof. *Heck & Paetow Claim Serv., Inc. v. Heck*, 93 Wis. 2d 349, 360, 286 N.W.2d 831, 836 (1980). Tralmer fails to meet its burden. It has not established the existence of the first element, that the Ericksons intended to create a partnership.

To establish the first element, Tralmer relies on Daniel's testimony that "[t]his is a partnership as it relates to a marriage; she and I lived in that house and we operated it on that basis." Tralmer also relies on Sandra's testimony:

> Q. [You] ran this business as a partnership with your husband, did you not?
>
> A. [W]e were into it together just as we are in marri[age] that—in the partnership in that sense.
>
> Q. All right. So it was a partnership between you and your husband, something the two of you engaged in together.
>
> A. Yes, we did it together.

The trial court made no explicit finding that Daniel and Sandra used "partnership" simply to mean their marriage rather than a business organization. However, we may assume that the trial court decided the missing finding consistently with its order. *Sohns*, 11 Wis. 2d at 453, 105 N.W.2d at 820. The court concluded that the Ericksons are entitled to claim property under the business exemption. Only a debtor can claim exemptions under § 815.18, STATS., and, under § 815.18(2)(c), a partnership is not a debtor. We infer that the trial court concluded that Daniel and Sandra used "partnership" to mean their marriage.

Other evidence supports the trial court's implied finding that the Ericksons used "partnership" in its marriage sense. Their 1990 and 1991 tax returns describe the bed and breakfast as a sole proprietorship and name Sandra the sole proprietor. *See Skaar*, 61 Wis. 2d at 99, 211 N.W.2d at 645 (no partnership when, among other things, husband and wife did not file partnership tax returns).[9]

Tralmer argues that even if the Ericksons did not create a partnership, they publicly held themselves out as a partnership and are therefore estopped under § 178.13(1), STATS., from claiming otherwise. Tralmer claims that the Ericksons represented the Victoriana

---

[9] *See Stern v. DOR*, 63 Wis. 2d 506, 510, 217 N.W.2d 326, 328 (1974) (no partnership when spouses' close relationship stemmed from marriage and desire to hold property jointly and not from any business motive); and *Skaar v. DOR*, 61 Wis. 2d 93, 99, 211 N.W.2d 642, 645 (1973), *cert. denied*, 416 U.S. 906 (1974) (no partnership when, among other things, spouses' understanding more consistent with marriage than partnership).

as a partnership by naming Sandra and Daniel as its hosts in advertising brochures. Section 178.13(1) provides in relevant part:

> When a person . . . represents himself, or consents to another representing him to any one, as a partner . . . with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, *on the faith of such representation, given credit* to the . . . apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made . . . .

(Emphasis added.)

Tralmer's estoppel claim fails. A party claiming partnership by statutory estoppel must prove the elements of estoppel. *Wisconsin Tel. Co. v. Lehmann*, 274 Wis. 331, 336, 80 N.W.2d 267, 270 (1957).[10] Reliance is an element of estoppel under § 178.13(1), STATS. Tralmer did not establish that it relied on the Ericksons' advertising brochures when it extended credit to them.

## III. BUSINESS EQUIPMENT

As we noted, a debtor may claim as exempt from execution up to $7500 worth of business property,

---

[10] When *Wisconsin Tel. Co. v. Lehmann*, 274 Wis. 331, 80 N.W.2d 267 (1957), was decided, the principle of partnership by estoppel appeared in § 123.13, STATS. Section 123.13 was renumbered § 178.13, STATS. Laws of 1967, ch. 92, § 22.

including equipment, used in the debtor's business. Section 815.18(3)(b), STATS. Equipment means "goods used or bought for use primarily in a business . . . ." Section 815.18(2)(f). We have already affirmed the trial court's conclusion that the Victoriana was a business. The question is whether the property claimed to be business property was used or bought for use primarily in the business.

The trial court concluded that the items the Ericksons listed as business property in their claim were equipment, under § 815.18(2)(f), STATS. Tralmer asserts that, with few exceptions, the items were not equipment because the Ericksons held the items primarily for their personal, family or household use. If Tralmer is right, the items were consumer goods rather than equipment. Section 815.18(3)(d).

Tralmer asserts that the word "primarily" in relation to secured transactions under the Uniform Commercial Code requires a "determination of the main or chief use of a product and centers attention on the actual use by a particular individual," citing *Business Modeling Techniques, Inc. v. General Motors Corp.*, 474 N.Y.S.2d 258, 261 (N.Y. Sup. Ct. 1984). Section 9-109(2) of the U.C.C. defines equipment.[11] Part of that definition is adopted as the definition of equipment found in § 815.18(2)(f), STATS. The Official

---

[11] Section 9-109(2) of the U.C.C. provides that goods are equipment "if they are *used or bought for use primarily* in business (including farming or a profession) or by a debtor who is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods." (Emphasis added.) Wisconsin has adopted U.C.C. § 9-109(2) as § 409.109 (2), STATS.

Comment to § 9-109 provides that in a borderline case "the principal use to which the property is put should be considered as determinative." U.C.C. § 9-109 Official Comment 2. We agree that the "primary use" standard in § 815.18(2)(f) requires that a court consider actual use.

██

The application of that standard to the facts is a question of law which we review de novo. *Kania*, 99 Wis. 2d at 758, 300 N.W.2d at 68. Because the court made no specific findings of fact we assume it relied on the uncontradicted testimony of the Ericksons to decide the missing findings. *Sohns*, 11 Wis. 2d at 453, 105 N.W.2d at 820.

Daniel testified that he and Sandra limited their personal activities mainly to their kitchen, bedroom and bathrooms, and that they severely curtailed their personal use of the rest of the house. Sandra testified that after opening the Victoriana the items claimed as exempt business property were used primarily for the business. She testified that she and Daniel spent most of their time in the kitchen and master bedroom, and that the other rooms in the house were "off limits," except occasionally when they had company or their daughter stayed with them. Their daughter "lived there occasionally" during the relevant time and occupied one of the guest bedrooms. While on military leave, their son stayed in one of the bedrooms. Occasionally, social guests slept overnight in one of the bedrooms. Paying guests stayed at the Victoriana on three nights in 1990, thirty-two nights in 1991, and not at all in the first two and one-half months of 1993—for a total of thirty-five nights in eighteen months.

Because the Ericksons made some personal use of the goods, Tralmer argues that the goods were used for

personal purposes for the entire period, except for those thirty-five nights. We disagree. When a good is not in use, no business use or consumer use occurs. We take into account the periods of use, not disuse.

Tralmer attacks the credibility of the Ericksons. The trial court's order is such that it must have accepted the Ericksons' testimony. The credibility of a witness is, of course, within the exclusive province of the factfinder, here the trial court. *Gehr v. City of Sheboygan*, 81 Wis. 2d 117, 122, 260 N.W.2d 30, 33 (1977). The Ericksons' testimony supports the conclusion that while the Victoriana was open for business, the use of the items discussed, except for those located in the kitchen, was primarily for business. The items therefore were business equipment under § 815.18(2)(f), STATS., except for the kitchen items.[12]

Because Sandra and Daniel testified that they spent most of their time in their kitchen and bedroom, the evidence does not support the conclusion that they used the kitchen furniture primarily in the business. The trial court's decision that the kitchen goods were equipment must be reversed.

## IV. AMENDED CLAIM FOR EXEMPTIONS

As we noted earlier, the debtor must affirmatively claim an exemption "at the time of seizure of property or within a reasonable time after the seizure," but before the property is disposed of by sale or court order. Section 815.18(6)(a), STATS.

---

[12] Those items appear to include the oak kitchen table, the four round-back oak chairs and the baker's table.

About six weeks after the sheriff levied on their property, the Ericksons affirmatively claimed that *all* of the seized goods were exempt consumer goods or business property. They claimed that forty of the ninety-nine items seized were consumer goods and the rest were business property.

In July 1992, after the Ericksons received the appraisal results which they had requested under § 815.19(1), STATS.,[13] they moved the trial court for an order determining their rights to exemptions. On July 31, Tralmer sought an order prohibiting the Ericksons from amending their claim. The Ericksons filed an amended claim on August 5 and, in September, amended their claim a second time.[14] The court denied Tralmer's motion to prohibit the amendments.

The Ericksons' first amended claim reclassified thirty-four items as business property which they had originally listed as consumer goods, and seven items as consumer goods which they had originally claimed as business property. Tralmer claims that the Ericksons recast consumer goods as business property in order to

---

[13] Section 815.19(1), STATS., provides in relevant part:

> Whenever personal property is seized on attachment or execution and any part of the property is exempt therefrom and the exemption is claimed by the debtor or the debtor's spouse, the officer making the seizure shall, upon request by either of them . . . cause the exempt property to be appraised by 2 disinterested freeholders of the county, who shall first be sworn by the officer to make a true appraisement thereof, which appraisement shall be in writing, be signed by the appraisers and be prima facie evidence of the value of the property appraised.

[14] The Ericksons contend that although they amended their claimed exemptions in August, no further amendment occurred. However, their final filing includes a cocktail ring, sugar mold and dress form, as well as other personal property, totalling $1400, not included in their August filing.

569

gain the benefit of an exemption to which they are not entitled.[15] Tralmer further asserts that the trial court erroneously exercised its discretion by allowing the Ericksons to amend their claimed exemptions because (1) the amendments did not occur within a reasonable time after the seizure of the goods, and (2) each item's use was established before the Ericksons filed their original claim.

Tralmer asserts that we should rule the amendments were not made within a reasonable time after the seizure. It claims that if allowed, amendments such as those made by the Ericksons require a creditor to hit a moving target, discourage prompt disposition of non-exempt property and increase disposition costs.

■

However, § 815.18(6)(a), STATS., the claim provision, requires only that the claim be made within a reasonable time after the seizure and prior to the disposition of the property by sale or court order. It is silent regarding amendments. While Tralmer would benefit if the law favored its position, Tralmer shows no actual prejudice by reason of delay, confusion of the issues, or loss of the right to cross-examine the Ericksons under oath. Moreover, Tralmer's suggestion that we create a requirement regarding amendments is inconsistent with the legislature's charge in

---

[15] Most of the "consumer goods" later claimed as "business property" were furniture. The "business property" that became "consumer goods" included: a diamond ring, diamond earrings, a gold bracelet, a gold necklace, and miscellaneous costume jewelry. We note that the Ericksons' final declaration of exemptions includes $14,707.50 worth of business property and $9,862.50 worth of consumer goods. As a result of the August amendment, there was a net increase of $5,752.50 of claimed business property in the final filing.

§ 815.18(1), that we construe the exemption statute "to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges." So long as a debtor initially files claimed exemptions within a reasonable time after seizure and prior to disposition, as happened here, nothing prohibits a debtor from amending a claim.

Tralmer asserts that because the use of each item was established before the Ericksons filed their original claim, the trial court improperly allowed amendment. The Ericksons' first amended claim states that the reason for amendment is § 815.19(1), STATS., the appraisal statute. The Ericksons claim that because the value of each good was not established when they first claimed their exemptions, they could not make their final selections until after receiving appraisals. Tralmer points out that a good's use does not depend on its appraised value, all of the seized goods came from the Ericksons' home and they knew each item's primary use at the time they first declared their exemptions.

The Ericksons' reason for amending their claim is lame, but the statute does not require a debtor to give a reason for amending a claim. The Ericksons' reason, as well as the amendment itself, reflects on their credibility, but after they filed the first amended claim, Tralmer had an opportunity to question them at the motions hearings. Because the trial court ruled in favor of the Ericksons, it must have found their testimony credible. The credibility of witnesses is for the trier of

571

fact to decide, not us. *Gehr*, 81 Wis. 2d at 122, 260 N.W.2d at 33.

We affirm the order denying Tralmer's motion to prohibit the Ericksons from filing an amended claim.

## V. SUPPLEMENTARY RECEIVER

Tralmer contends that the trial court should have appointed a receiver under § 816.04, STATS., to prevent the Ericksons from dissipating their nonexempt goods.[16] It relies on the undisputed fact that while the judgment remained unsatisfied, Sandra sold and gave away goods not levied on. Indeed, she sold and gave away goods which were later listed as consumer goods in the final amended claim, including a cocktail ring appraised at $4500 that she sold to a friend for $1500.

Tralmer asserts that under § 816.04, STATS., at the request of a judgment creditor a trial court *must* appoint a supplementary receiver, provided that no other supplementary receiver has been appointed. On the contrary, § 816.04 provides that "[a] receiver *may* be appointed." (Emphasis added.) Whether to appoint a receiver is discretionary.

Our review of a trial court's discretionary decision is highly deferential. The record need only reflect the court's "reasoned application of the appropriate legal

---

[16] Section 816.04, STATS., provides:

A receiver may be appointed but before appointing a receiver the court or judge shall ascertain, if practicable, whether any other supplementary proceedings are pending against the judgment debtor, and if there be any, the plaintiff therein shall have notice to appear and shall have notice of all subsequent proceedings in relation to such receivership. There shall be but one receivership at any time.

standard to the relevant facts in the case." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982). If the record shows that the court exercised its discretion and a reasonable basis exists for its determination, the court properly exercised its discretion. *Id.* We search the record for reasons to sustain the court's discretionary decision. *Loomans v. Milwaukee Mut. Ins. Co.*, 38 Wis. 2d 656, 662, 158 N.W.2d 318, 320 (1968). We conclude that the trial court properly exercised its discretion.

The trial court had a reasonable evidentiary basis for its finding that the Ericksons would not make future questionable transfers and a reasonable rationale for its decision. Although Sandra had sold and given various items to her daughter, she testified that her daughter returned everything except a bookshelf. From this testimony, the trial court could reasonably infer that no receiver was needed to safeguard the property still in the Ericksons' possession. Before exercising its discretion, the court inquired as to the status of the goods that Sandra had sold and given away, and it required the Ericksons to exercise their consumer exemptions so as to include all of those items (including the cocktail ring).[17]

---

[17] By requiring the Ericksons to exercise their consumer exemptions so as to include all of the property sold and given away, the court ensured that those sales and gifts were not fraudulent conveyances or transfers. A conveyance or transfer of wholly exempt property is not a fraudulent conveyance or transfer. Section 815.18(10), STATS. Property that is not totally exempt in value under § 815.18 may be subject to a fraudulent transfer action under ch. 242, STATS., to set aside that transfer to the extent that the property's value is not exempt. Section 815.18(10). " '[T]ransfer' means every mode . . . of disposing of or

██

Tralmer contends that the trial court refused to appoint a supplementary receiver because the Victoriana was not a multi-million or multi-hundred thousand dollar business. That mischaracterizes the court's decision. The court said that if the Victoriana had been a multi-million or multi-hundred thousand dollar business "that *might* have been a different situation." (Emphasis added.) The court said it gave the Ericksons the benefit of the doubt regarding Sandra's questionable transfers because it did not anticipate that in the future the Ericksons would make such transfers. It therefore found no need for a receiver.

Because the record supports the trial court's exercise of its discretion, we affirm its denial of Tralmer's motion to appoint a receiver.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

---

parting with an *asset* . . . ." Section 242.01(12), STATS. (Emphasis added.) "Asset" does not include "[p]roperty to the extent it is exempt under s. 815.18." Section 242.01(2)(bm).