J. Dale Dawson and Gudrun Dawson,
Plaintiffs-Respondents,†

v.

Robert J. Goldammer and Eileen K. Goldammer,
Defendants-Appellants.

Court of Appeals

*Nos. 2004AP2507, 2004AP3335. Submitted on briefs September 29, 2005.—Decided July 26, 2006.*

2006 WI App 158

(Also reported in 722 N.W.2d 106.)

† Petition to review dismissed 9/27/06.

729

On behalf of the defendants-appellants, the cause was submitted on the briefs of *David R. Sparer* of *Herrick & Kasdorf, LLP*, Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Robert G. Pyzyk and Matthew R. Jelenchick of Niebler, Pyzyk, Klaver & Wagner LLP*, Menomonee Falls.

A nonparty brief was filed by *Nelle R. Rohlich* and *John S. Greene*, assistant attorneys general, and *Peggy A. Lautenschlager*, attorney general.

A nonparty brief was filed by *Mark A. Silverman* of *Legal Action of Wisconsin, Inc.*, Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J. In *Dawson v. Goldammer*, 2003 WI App 3, ¶ 1, 259 Wis. 2d 664, 657 N.W.2d 432 (*Dawson I*), we held that a tenant may seek enforcement of a rental agreement that includes an attorney's fees provision in violation of WIS. ADMIN. CODE § ATCP 134.08(3) (Oct. 2004).[1] We now hold that when a tenant seeks enforcement of such a lease, the tenant can sever the attorney's fees provision and enforce the remainder of the lease.[2] We therefore reverse that portion of the trial court's judgment awarding landlords J. Dale and Gudrun Dawson attorney's fees. However, we affirm the trial court's rulings on all other disputed grounds.

## FACTS[3]

¶ 2. Although a fair amount of procedural history accompanies this case, the facts central to the severability issue are straightforward. In 1995, the Dawsons

---

[1] All references to the WIS. ADMIN. CODE § ATCP 134.08(3) are to the October 2004 version of this administrative code provision.

[2] We certified this issue to our supreme court, but the court declined to accept jurisdiction over this appeal.

[3] We remind *both* parties that the fact section should objectively recite the historical and procedural facts; it is no place for argument or "spin." *See Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 5 n.2, 281 Wis. 2d 173, 696 N.W.2d 194, *review denied,* 2005 WI 136, 285 Wis. 2d 626, 703 N.W.2d 376 (No. 2003AP1488).

leased a parcel of property to Robert J. and Eileen K. Goldammer under a written four-year agreement denominated a "farm lease." The parcel is located partly in the town of Jackson in Washington county and partly in the town of Cedarburg in Ozaukee county. The lease made time of the essence with regard to rent payments on the first of each month and provided that if the full rent was not paid by the tenth of the month, the Dawsons could immediately terminate the lease upon written notice to the Goldammers. Rent for the first four-year term was set at $1500 per month. Under the terms of the lease, the Goldammers had two renewal options of four years each. Furthermore, the lease contained a provision requiring the Goldammers to "pay and discharge all costs and attorney's fees and expenses that shall arise from enforcing any of the covenants of this lease by the lessor."[4]

¶ 3. The Goldammers exercised the first renewal option, which extended the lease until December 2003. Under the renewal terms, the Goldammers owed rent of $1750 per month. The Goldammers alleged that numerous problems with the property arose, including a damaged barn and septic system problems, and claimed a $200–per-month rent abatement. The Dawsons disputed these allegations but accepted the reduced rent payments from January 2000 until April 2000. As of May 2000, the Dawsons began rejecting the reduced rent. The Goldammers opened an escrow account and began depositing rent payments to that account. The Goldammers advised the Dawsons that when they were

---

[4] The parties do not dispute that this provision is in direct violation of WIS. ADMIN. CODE § ATCP 134.08(3), which prohibits the inclusion of a clause requiring a tenant to pay a landlord's legal expenses for enforcing a rental agreement.

ready to accept the rent payments, the Goldammers would make payment from the escrowed funds.

¶ 4. Litigation ensued. On August 24, 2000, the Dawsons filed an action for declaratory judgment seeking a declaration that the lease had been violated by the Goldammers and had therefore terminated by its own terms. The Goldammers denied nonpayment of rent, filed a number of counterclaims, and requested a jury trial. On June 20, 2001, the Dawsons moved for summary judgment. The circuit court held that the Goldammers had paid the July 2000 rent in a timely manner. The court also determined that the parties had entered into an implied stipulation agreement, which required the Goldammers to deposit the rent into an escrow account pending the outcome of the case and that the Goldammers were obligated to pay monthly rent of $1550 beginning in July 2000.

¶ 5. The circuit court sua sponte raised and relied upon *Baierl v. McTaggert*, 2001 WI 107, 245 Wis. 2d 632, 629 N.W.2d 277, to rule that the attorney's fees provision in the lease agreement violated WIS. ADMIN. CODE § ATCP 134.08(3), and rendered the lease unenforceable by *either* party, leaving the parties with a month-to-month tenancy. The Dawsons then gave the Goldammers notice terminating the month-to-month tenancy. The Goldammers did not vacate, and the Dawsons followed with an eviction action.

¶ 6. The Goldammers appealed the circuit court's determination that the lease was null and void. In a published opinion, we held that a tenant may seek enforcement of a lease that includes an attorney's fees provision in violation of WIS. ADMIN. CODE § ATCP 134.08(3). However, we rejected the Goldammers' contention that *Baierl* not only permitted them to enforce

the lease but also prevented the Dawsons from asserting their rights under the lease.

> [W]hile a landlord cannot seek damages for abandonment of a lease that has an ATCP violation, a tenant who seeks to prospectively enforce the lease has waived his or her rights pursuant to *Baierl* in the event of a breach on the part of the tenant. Accordingly, we conclude that by seeking to enforce the lease, the Goldammers are reaffirming the terms of the lease and the Dawsons' reciprocal right to enforce those provisions.

*Dawson I*, 259 Wis. 2d 664, ¶ 11.

¶ 7. After our decision was released, the Dawsons amended their complaint, pursuing a declaration that the lease was void, an eviction, and money damages. The Goldammers realleged a previously filed counterclaim. The Dawsons moved to strike the counterclaim for discovery violations and, based upon the totality of the circumstances presented at the motion hearing, the trial court granted the Dawsons' motion. The Dawsons moved for summary judgment on their declaratory judgment action. The court granted the Dawsons' motion, terminating the lease and evicting the Goldammers. The circuit court also granted the Dawsons' money judgment and ordered the Goldammers to pay the Dawsons' "actual attorneys' fees, costs and disbursements in an amount to be determined hereafter." Subsequently, the court appointed a receiver.

## DISCUSSION

### *Attorney's Fees*

¶ 8. The primary disputed question in this case is whether a tenant who opts to enforce a lease containing

an illegal attorney's fees provision can sever the provision and enforce the remainder of the lease or whether the tenant must abide by the lease in its entirety. The Dawsons argue that once the Goldammers elected to enforce the lease, they did so at their own peril and are now subject to the attorney's fees clause. The Goldammers contend that simply because they have chosen to enforce the lease containing the illegal attorney's fees provision, does not mean that they are precluded from invoking the rule of severability. We agree with the Goldammers.

¶ 9.    The question before us is one of severability, which requires an examination of the controlling administrative regulation and the intent underlying the provision. It therefore presents us with a question of law. *See Baierl*, 245 Wis. 2d 632, ¶ 14. We review such questions independently of the legal conclusions reached by the circuit court. *See id.*

¶ 10.    In *Baierl*, our supreme court held that a landlord who includes an attorney's fees provision in a residential lease, which is specifically prohibited by Wis. Admin. Code § ATCP 134.08(3), may not enforce the terms of a lease against tenants who had prematurely abandoned the rental property. *Baierl*, 245 Wis. 2d 632, ¶¶ 2, 5. The court determined that the inclusion of the prohibited provision did not render the contract a legal nullity because then "not even the tenants could enforce the lease." *Id.*, ¶ 20. Rather, the landlord could not enforce the lease because he could not sever the attorney's fees provision from the lease as a whole. *Id.*, ¶ 40.

¶ 11.    According to the court, the rule of severability holds that a contract may survive if an illegal clause can be severed from the remainder of the contract

without defeating the primary purpose of the bargain. *Id.*, ¶ 15 (citing *Simenstad v. Hagen*, 22 Wis. 2d 653, 126 N.W.2d 529 (1964), for the rule of severability). However, our supreme court explained, the rule of severability was not unconditional. *Baierl*, 245 Wis. 2d 632, ¶ 18. Where the illegality of a contractual provision arises from the violation of a statute, the rule of severability is qualified by the controlling statute. *Id.* Thus, the court held, even if a lease provision is collateral to the underlying bargain of the lease, the severability analysis requires an examination of the controlling statute or, as in the case, the administrative regulation. *Id.*

¶ 12.   Bearing these principles in mind, the court reasoned that to allow the landlord to enforce the lease would completely defeat the objectives of WIS. ADMIN. CODE § ATCP 134.08(3). *Baierl*, 245 Wis. 2d 632, ¶¶ 20, 40. The court characterized landlord-tenant relations as "an area fraught with consumer protection concerns." *Id.*, ¶ 25. According to the court, regulatory objectives of § ATCP 134.08(3) include "enforcement of private legal rights . . . in the realm of landlord-tenant relations" and alleviation of the inherent inequality of bargaining power that exists between landlords and tenants. *Baierl*, 245 Wis. 2d 632, ¶¶ 25, 31. In enacting the regulation, the Department of Agriculture, Trade and Consumer Protection sought to prevent tenants from being intimidated into forgoing their legal rights due to the fear that they would be forced to bear the landlord's litigation expenses. *Id.*, ¶ 30. The court concluded that allowing a landlord to sever the illegal attorney's fees provision and enforce the remainder of the lease would mean that "[l]andlords would have little incentive to omit such clauses and change their practice. A landlord could insert the clauses with relative

impunity, knowing that the court will merely ignore this unfair trade practice by severing the clause." *Id.*, ¶ 34.

¶ 13. In *Dawson I*, we relied on *Baierl* to conclude that even though a landlord cannot enforce a lease with an illegal attorney's fees provision, the tenant can. In *Baierl*, the court wrote, "Where a statute is intended to protect one party to a contract, that party may seek enforcement notwithstanding the violation of the statute enacted for their protection." *Baierl*, 245 Wis. 2d 632, ¶ 20. From the *Baierl* court's discussion of the regulation's object, history and subject matter, we determined that the regulation was "clearly designed to protect the tenant from a provision landlords often insert solely for the purpose of discouraging tenants from enforcing their legal rights." *Dawson I*, 259 Wis. 2d 664, ¶ 9. "To refuse to allow a tenant in this situation to enforce the lease would stand the rationale of the *Baierl* decision on its head by punishing the class the regulation is intended to benefit and permitting the landlord to unfairly reap the benefit of the clause's inclusion." *Dawson I*, 259 Wis. 2d 664, ¶ 9.

¶ 14. Having determined in *Dawson I* that the Goldammers may enforce the lease, we now must determine whether the Goldammers may do so without being subject to the attorney's fees provision. Despite the Dawsons protestations to the contrary, we did not resolve this question in *Dawson I*. There, we stated:

> Although we conclude the Goldammers may seek enforcement of the lease, this decision does not grant the Goldammers license to avoid their obligations under the lease. The Goldammers appear to argue that *Baierl* not only permits them to enforce the lease, but

738

also prevents the landlord from asserting his or her rights under the lease. The Goldammers want the best of both worlds.

> Here . . . the tenants seek to prospectively enforce the lease. The tenants are aware that the attorney's fees provision is prohibited by the ATCP regulation but nonetheless are opting for specific performance. In so doing, the tenants may not pick and choose which of the provisions they will adhere to in the future and then rely on the rationale in *Baierl* to prevent the landlord from asserting his or her rights under the lease. By the tenant's very action, he or she wants enforcement of the lease and is responsible for the terms of the lease.

*Dawson I*, 259 Wis. 2d 664, ¶¶ 10–11. This language must be read in the context of the Goldammers' appellate arguments.

¶ 15. The Goldammers sought enforcement of the Dawson's obligations under the lease, but avoidance of any and all responsibilities they may have had under the lease. In the above-quoted paragraphs, we simply informed the Goldammers that they could not "pick and choose" the provisions of the lease they wanted to confirm; rather, we told the Goldammers that if they wanted to enforce the lease, they had to adhere to any otherwise legally valid terms. We did not speak to the question of whether the Goldammers could enforce the lease without the illegal attorney's fees provision. We now expressly hold that a tenant who opts to enforce a lease containing a prohibited attorney's fees provision pursuant to our holding in *Dawson I* may sever the provision and enforce the remaining legally valid lease terms.

¶ 16. The rule of severability provides that a contract may survive if an illegal clause can be severed

from the remainder of the contract without defeating the primary purpose of the bargain. *Baierl*, 245 Wis. 2d 632, ¶ 15 (citing *Simenstad*). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 184 (1981) (stating the rule of partial enforcement with the omission of an offending but not essential provision). In this case, the purpose of the lease—the delineation of the rights and obligations between the landlords and the tenants—can be satisfied absent the prohibited attorney's fees clause. *Cf.* 15 GRACE McLANE GIESEL, CORBIN ON CONTRACTS § 89.10 at 659 (2003) (observing that modern courts view provisions with respect to remedies, to the extent that they are unenforceable, as easily separable from the rest of the contract so that the troublesome provision is excised and the remaining contract stands fully enforceable).

¶ 17.   However, even if the illegal lease provision is collateral to the underlying bargain of the lease, where the illegality of the provision arises from a violation of a regulation, the intent behind the regulation drives our severability analysis. *See Baierl*, 245 Wis. 2d 632, ¶¶ 20–21. Under this analysis, an illegal provision may be severed from an otherwise enforceable agreement at the election of the party whom the regulation is designed to protect. *See id.*, ¶ 20; RESTATEMENT (SECOND) OF CONTRACTS §§ 178 cmt. f, 179 cmt. c, 184 (1981). If we refused to allow a party who belongs to the protected class to excise the prohibited provision, we would be penalizing the very person for whose benefit the legislature declared the clause illegal and permitting the other person, toward whom the legislature directed the prohibition, to unfairly benefit from the provision's inclusion. *See Dawson I*, 259 Wis. 2d 664, ¶ 8 (citing 15 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1540 (Interim Ed. 1979).

¶ 18.   As we discussed in *Dawson I*, WIS. ADMIN. CODE § 134.08(3) is clearly designed to protect tenants from a provision landlords often insert solely for the purpose of intimidating tenants into forgoing their legal rights. *Dawson I*, 259 Wis. 2d 664, ¶ 9. Permitting tenants to sever an illegal attorney's fees clause advances this regulatory intent of protecting tenants. It allows tenants to pursue their legal rights unencumbered by the fear that they will be forced to bear their landlords' litigation expenses and strips landlords of any benefit of the illegal clause's inclusion. Thus, only the tenants, in this case the Goldammers, may elect to sever the illegal attorney's fees provision and enforce the remainder of the legally valid lease terms.

¶ 19.   The Dawsons seem to suggest that permitting the Goldammers to enforce the lease without the illegal attorney's fees provision would violate the general rule that Wisconsin courts will seek to enforce contracts deliberately made by the parties and not unreasonable in their terms rather than set them aside. *See Burstein v. Phillips*, 154 Wis. 591, 594, 143 N.W. 679 (1913). The Dawsons direct us to record documents demonstrating that when the Goldammers opted to prospectively enforce the lease following *Dawson I*, they knew it included an illegal attorney's fees provision and that they had the option to avoid the lease and its attorney's fees provision in favor of a month-to-month tenancy.

¶ 20.   However, the general rule favoring enforceability is not absolute. The preference for enforcing bargains may give way where a contract violates a statute, rule of law or public policy. *Baierl*, 245 Wis. 2d 632, ¶ 12. Furthermore, the rule of severability operates in this case to permit the parties to enforce the remaining legally valid lease terms. Because the Goldammers

have opted to enforce the lease, albeit absent the attorney's fees clause, the Dawsons may pursue their rights under any other legally valid lease provision. For the forgoing reasons, we reverse the trial court's award of attorney's fees and remand for proceedings consistent with this portion of our opinion.

*Dismissal of Counterclaim as Sanction*

¶ 21.    The Goldammers argue that the trial court erroneously exercised its discretion when it dismissed their counterclaim as a sanction for their conduct during discovery. WISCONSIN STAT. § 804.12(4) (2003–04)[5] authorizes the trial court to impose sanctions against a party who fails to comply with a court order compelling discovery. The decision to impose a discovery sanction is discretionary. *Sentry Ins. v. Davis*, 2001 WI App 203, ¶ 19, 247 Wis. 2d 501, 634 N.W.2d 553. A discretionary decision will be sustained if the trial court has examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Id.*

¶ 22.    Because dismissal of a complaint terminates the litigation without regard to the merits of the claim, dismissal is an extremely drastic penalty that should be imposed only where such harsh measures are necessary. *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 542, 535 N.W.2d 65 (Ct. App. 1995). Dismissal is appropriate only where the noncomplying party's conduct is egregious or bad faith and without a clear and justifiable excuse. *Id.* To dismiss a complaint for bad faith, the trial court

---

[5] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

must find that the noncomplying party intentionally or deliberately delayed, obstructed or refused the requesting party's discovery demand. *Id.* at 543. To dismiss a complaint for egregious conduct, the court must find that the noncomplying party's conduct, though unintentional, is so extreme, substantial and persistent that it can properly be characterized as egregious. *Id.*

¶ 23. In November 2003, the Dawsons filed a motion to compel discovery. The motion states that in January 2002, the Dawsons had served on the Goldammers a request for production of documents relating to the Goldammers' business operations, bank accounts, and nonattorney/client privilege communications. After thirty days, the Dawsons contacted the Goldammers inquiring as to the status of the discovery responses. The Goldammers referred to an appellate stay in place as grounds for refusal to produce the documents. The motion states that in May 2003, the Dawsons contacted the Goldammers and again requested the discovery responses. In response, the Goldammers filed a motion for a protective order. The Goldammers argued that none of the Dawsons' requests were relevant to the proceeding and they were merely an attempt to harass the Goldammers.

¶ 24. On December 4, 2003, the court held a hearing on both motions. The court walked through each of the Dawsons' six requests, noting that the Dawsons were entitled to seek information relating to the Goldammers' counterclaims. The court concluded that all but one of the discovery requests were reasonable and ordered the Goldammers to answer them within thirty days or by January 5, 2004.

¶ 25. On December 9, 2003, the Goldammers filed an objection to the proposed discovery order the Dawsons had drafted after the hearing. On January 12,

2004, the Goldammers filed another motion for a protective order. On January 15, 2004, the Dawsons filed a motion to strike the Goldammers counterclaim. In the motion, the Dawsons described their repeated attempts to obtain all of the requested discovery materials. According to the motion, on December 23, 2003, the Goldammers contacted the Dawsons to arrange for production of the documents. The Dawsons accommodated the Goldammers' request to bring a portion of the documents on January 5, 2004, and further documents the following day. On January 5, the Goldammers brought five bankers boxes and a binder of documents to the Dawsons' counsel's office. The Goldammers informed the Dawsons that they had a meeting on January 6 and could not make document production as they had previously promised. The Dawsons again accommodated the Goldammers, allowing them to bring the remaining documentation on January 7. On January 7, the Goldammers produced some, but not all, of the discovery materials. The Goldammers informed the Dawsons that they needed more time. Once again, the Dawsons granted the Goldammers more time and set up an appointment for 10:00 a.m. on January 12. The Goldammers contacted the Dawsons at 9:54 a.m. on January 12 and informed the Dawsons that they would not be attending the meeting.

¶ 26.   The trial court determined that the Goldammers' failure to comply with the order compelling discovery was "egregious" and in "bad faith" and dismissal of the Goldammers' counterclaim was warranted. The court upheld its ruling upon reconsideration. We see no reason to disturb this determination.

¶ 27.   Over the nearly two years the Goldammers had to produce the requested information, the

Goldammers were uncooperative and combative. After the court issued the discovery order, the Goldammers continued to exhibit an unwillingness to voluntarily produce the sought-after evidence. The Dawsons repeatedly accommodated the Goldammers by granting them more time to comply with the order, a professional courtesy the Dawsons did not have to extend. Although the Goldammers produced some of the requested discovery materials, they failed to fully comply with the trial court's discovery order. The Goldammers' conduct interfered with the court's ability to administer the case and the Dawsons' ability to defend the Goldammers' counterclaims. In light of these circumstances, we hold that the trial court did not erroneously exercise its discretion when it determined that the Goldammers had acted in bad faith and egregiously and dismissed the Goldammers' counterclaim.

*Summary Judgment*

¶ 28.    The Goldammers next challenge the trial court's grant of summary judgment in favor of the Dawsons. The Goldammers maintain that genuine issues of material fact remain, in particular on the issue of the amount of back rent owed. We conclude that the trial court did not err in granting summary judgment based on the items submitted in support of and opposition to the motion.

¶ 29.    We review an order for summary judgment de novo, owing no deference to the trial court. *Waters v. United States Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). Summary judgment is appropriate when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2).

¶ 30. Our conclusion here is controlled by the well-established principle of summary judgment methodology that parties against whom a properly supported motion for summary judgment is made may not rest on mere denials in their pleadings but must counter the movants' evidentiary submissions with similar proofs of their own. The supreme court explained some twenty-five years ago:

> While it is the moving party's responsibility to initially establish a *prima facie* case for summary judgment, once it is established the party in opposition to the motion may not rest upon the mere allegations or denials of the pleadings, but must, by affidavits or other statutory means, set forth specific facts showing that there exists a genuine issue requiring a trial . . . . Where the party opposing summary judgment (the defendant in this case) fails to respond or raise an issue of material fact, the trial court is authorized to grant summary judgment . . . .

*Board of Regents of Univ. of Wis. Sys. v. Mussallem*, 94 Wis. 2d 657, 673–74, 289 N.W.2d 801 (1980) (citation and footnote omitted).

¶ 31. More recently, this court has noted that an opponent of summary judgment "may not rely on a conjecture that evidence in support of the motion 'may' not be accurate or reliable," but must affirmatively "counter with evidentiary materials demonstrating there is a dispute." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶ 48, 246 Wis. 2d 933, 632 N.W.2d 59, *aff'd*, 2002 WI 80, 254 Wis. 2d 77, 646 N.W.2d 777. We also emphasized in *Physicians Plus* that "a party opposing summary judgment [is obligated] to submit materials on summary judgment to counter

the submissions of the moving party. It is not enough to simply claim that the moving party's submission should be disbelieved or discounted." *Id.*, ¶ 54.

¶ 32.   The affidavits and supporting documents the Dawsons submitted set forth a prima facie case for summary judgment. In response, the Goldammers jointly filed an affidavit in which they claimed that disputes existed, primarily concerning the amount of back rent due and their rent abatement claim. However, as the trial court pointed out, the Goldammers' affidavit consists largely of legal conclusions concerning the Dawsons' alleged breaches of the lease terms not entitled to consideration on a motion for summary judgment. *See Hopper v. City of Madison*, 79 Wis. 2d 120, 131, 256 N.W.2d 139 (1977). Furthermore, the Goldammers offered no evidentiary submissions to back up their allegations concerning the violations. It was their obligation to do so. *See Physicians Plus Ins. Corp.*, 246 Wis. 2d 933, ¶¶ 48, 54. We therefore conclude that the trial court correctly found that there is no genuine issue of fact for trial.

### *Appointment of a Receiver*

¶ 33.   The Goldammers challenge the trial court's appointment of a receiver to manage the property and fulfill the judgment. They contend that in doing so, the trial court exceeded its authority. We cannot agree.

¶ 34.   WISCONSIN STAT. § 816.04 grants the trial court the authority to appoint a receiver to help a judgment creditor achieve satisfaction. *See also* WIS. STAT. § 813.16(3) (stating that a court may appoint a receiver in an action by a judgment creditor under WIS.

STAT. ch. 816). The receiver acts as a collection agent for the specific judgment creditor he or she represents. "A receiver in aid of execution is authorized to collect those assets revealed by the examination of the debtor, take possession of them, apply them to the satisfaction of the judgment, and return the excess to the judgment debtor." *Candee v. Egan*, 84 Wis. 2d 348, 361, 267 N.W.2d 890 (1978). Whether to appoint a receiver is discretionary. *Tralmer Sales & Serv., Inc. v. Erickson*, 186 Wis. 2d 549, 572, 521 N.W.2d 182 (Ct. App. 1994). Our review of a trial court's discretionary decision is highly deferential. *Id.* We search the record for reasons to sustain the trial court's decision. *See id.* at 573.

¶ 35. The trial court's discretionary determination that the appointment of a receiver was appropriate in this case finds support in the record. First, the Goldammers failed to cooperate with the Dawsons' attempts to collect on the judgment. Because the Goldammers had not satisfied the judgment for $24,500, the Dawsons proceeded with an application for a supplementary examination pursuant to WIS. STAT. § 816.03. Subsequently, the Goldammers failed to comply with an order to appear before a court commissioner, testify under oath concerning their property and to bring with them documentation regarding their property and financial affairs. Their conduct led to a contempt finding and the appointment of the receiver. Second, in a case such as this, the appointment of a receiver evidences a preference for the conservation of scarce judicial resources—it ensures the orderly collection of judgments. As the trial court pointed out, "this case has a long, long history with this court and several other courts along the way."

¶ 36. The Goldammers argue that the trial court's order violates a principle of receivership articulated in

*Candee*. In *Candee*, our supreme court stated, "[A] receiver in aid of execution may not be ordered to manage the debtor's property or operate his [or her] business." *Candee*, 84 Wis. 2d at 361. The Goldammers point out that the court used a form of the word "manage" in its order. However, in placing the term in its order, the court specifically informed the parties that it did not "envision [the receiver] going and operating the horse farm." The court simply wanted to ensure that the receiver had the ability to control the horses and the property. *See, e.g., id.* at 362 (stating "although a receiver is typically authorized by his [or her] order of appointment to take *control* of all of the judgment debtor's nonexempt property, [the receiver] need actually do so only to the extent necessary to satisfy the claims of the judgment creditors . . . ." (emphasis added)). We also remind the Goldammers that the order is based upon language from their own proposed order. We affirm the court's order appointing a receiver for the Goldammers' property.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions; orders affirmed.