## COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 7, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP289**

Cir. Ct. No. 2022FA1005

**STATE OF WISCONSIN**

**IN COURT OF APPEALS DISTRICT II**

IN RE THE MARRIAGE OF:

ANTHONY FRANK KAPALCZYNSKI,

    PETITIONER-RESPONDENT,

 V.

BONNIE MAE KRAUSE-KAPALCZYNSKI,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Waukesha County: RALPH M. RAMIREZ, Judge. *Affirmed*.

        Before Gundrum, P.J., Neubauer, and Grogan, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bonnie Mae Krause-Kapalczynski, pro se, appeals from two circuit court orders related to the enforcement of the court's judgment of divorce involving Bonnie and her former husband, Anthony Frank Kapalczynski. Bonnie argues that the court erroneously exercised its discretion in granting Anthony's motion to appoint a receiver to oversee the sale of the couples' marital residence and erred in signing a writ of assistance so the sheriff's office could aid the appointed receiver in carrying out its duties.[1] We disagree and affirm.

## BACKGROUND

¶2 The facts pertinent to this appeal are not in dispute. Anthony petitioned the circuit court for a legal separation from Bonnie. On the date of the scheduled trial, Anthony converted the matter into a divorce action. At trial, the court heard testimony from Anthony and from two experts—one testified regarding her appraisal of the marital residence and was found by the court to be qualified and credible; one provided testimony and calculations related to the division of the marital estate and was also found by the court to be a credible and competent witness. Bonnie opted not to testify at the trial and was not called as an adverse witness.

¶3 Throughout the divorce proceedings, the circuit court commented on Bonnie's unwillingness to fully cooperate and explained that, without Bonnie's full participation, the court had "a one[-]sided story." The court further stated that "[i]n her decision not to testify or present evidence, [Bonnie] made an error as well but that is her error." Based on Bonnie's track record to date, the court stated

---

[1] Because the parties have the same last name, we refer to them by their first names for the sake of clarity.

in its oral ruling that if Bonnie was uncooperative with the sale of the marital residence, Anthony was to return to the court for an order authorizing the sale of the residence. The court ordered that any attorney's fees attributable to Bonnie's noncooperation would be assessed against Bonnie and paid from her share of the home-sale proceeds. The court also advised Bonnie that if she was uncooperative in the exchange of titles, then attorney's fees may be assessed against her for that as well.

¶4 After hearing the testimony at trial and considering the documents submitted by the parties, the circuit court issued its Findings of Fact, Conclusions of Law and Judgment of Divorce (collectively, the Findings). Of relevance to this appeal, the court, in its Findings, awarded Bonnie three vehicles and two jointly titled cash and deposit accounts. The court also ordered that the marital residence be put on the market within sixty days of the signing of the Findings. Upon Bonnie's objection to the Findings, the court held a hearing, after which it confirmed the Findings as appropriate based on the facts and law before it.

¶5 Over sixty days after the circuit court issued its Findings, Anthony filed a motion with the court seeking to compel Bonnie's cooperation with the court-ordered property disposition. Anthony notified the court that Bonnie was uncooperative with the selected realtor, that the realtor had received an offer to purchase the marital home for well over the appraised value, and that Bonnie had refused to entertain any offers to purchase, stating, "over [my] dead body." Anthony further informed the court that Bonnie had not taken the steps required to assume sole ownership of the bank accounts awarded to her or to transfer title of the vehicles awarded to her. The court held a hearing on Anthony's motion at which the realtor testified to having received four offers to purchase the marital residence, including one cash offer for over $30,000 above the asking price with

no contingencies. The parties did not have enough time to complete the hearing on Anthony's motion, so the court scheduled a second hearing.

¶6  Before the second motion hearing, Anthony requested that a receiver be appointed pursuant to WIS. STAT. § 813.16 (2023-24)[2] to assist in carrying out the terms of the Findings and for Bonnie to pay for the appointed receiver from her share of the sale of the home. Anthony called Bonnie to testify at the second hearing. The court tried to keep Bonnie focused on the issues at hand, noting that Bonnie was responsible for all attorney's fees related to the hearings. In response, Bonnie stated, "I'm not signing the house over. Whatever happens, happens. I'm not signing it over ... ."

¶7  At the close of the second hearing on the motion to compel Bonnie's cooperation, the circuit court found that Bonnie had failed to cooperate with the court's Findings. It ordered that Bonnie sign any and all documents necessary to effectuate the sale of the marital residence, the transfer of the motor vehicle titles, and the transfer of the bank accounts by the end of the following week at 4:00 p.m. In response to the court's oral ruling, Bonnie stated, "Take me to jail because I'm not signing anything. Take me to jail." The court then informed the parties that it will sign any orders required to effectuate the transfer of the marital property consistent with the Findings. The court further informed them that "[i]f that cannot be accomplished and you advise me in writing within twenty days after that deadline next week, then I will appoint a receiver ... to effectuate the transfers. I will assess attorney's fees for all of these proceedings against Ms. Kapalczynski."

---

[2]  All references to the Wisconsin Statutes are to the 2023-24 version.

¶8      Bonnie remained steadfast in her refusal to cooperate.  This resulted in additional court hearings, as well as the appointment of a receiver to manage the transfers necessary to divide the marital estate in accordance with the Findings. The circuit court subsequently signed the recently-appointed receiver's request for a writ of assistance which required that the local sheriff's department assist with the peaceful transfer of the marital residence, including the personal property contained therein.  Bonnie appeals.

## DISCUSSION

¶9      There are two issues before us on appeal: (1) whether the circuit court erroneously exercised its discretion in appointing a receiver to manage the sale of the marital residence; and (2) whether the court erred in signing the writ of assistance ordering the sheriff's department to aid the receiver in performing its duties.[3]

¶10     Turning first to the circuit court's appointment of a receiver, we conclude that Bonnie has failed to show that the court erroneously exercised its discretion with this appointment.   Under WIS. STAT. § 813.16, a circuit court "may" appoint a receiver under the following potentially pertinent circumstances:

> (1) On the application of either party, when the applying party establishes an apparent right to or interest in property which is the subject of the action and which is in the possession of an adverse party, and the property or its rents and profits are in danger of being lost or materially impaired.

---

[3] Although Bonnie identifies 31 issues to this court in her appellate brief, our jurisdiction review resulted in the issuance of an order dated April 30, 2024, limiting this appeal to the two issues discussed in this Per Curiam.  We therefore do not address the remaining issues briefed by Bonnie.

> (2) By the judgment, or after judgment, to carry it into effect or to dispose of the property according to the judgment.

Further, WIS. STAT. § 816.04 specifically grants circuit courts discretionary authority to appoint a receiver to help a creditor satisfy a judgment. As we have explained:

> The receiver acts as a collection agent for the specific judgment creditor he or she represents. "A receiver in aid of execution is authorized to collect those assets revealed by the examination of the debtor, take possession of them, apply them to the satisfaction of the judgment, and return the excess to the judgment debtor." Whether to appoint a receiver is discretionary. Our review of a [circuit] court's discretionary decision is highly deferential. We search the record for reasons to sustain the [circuit] court's decision.

*Dawson v. Goldammer*, 2006 WI App 158, ¶34, 295 Wis. 2d 728, 722 N.W.2d 106 (citations omitted).

¶11 Bonnie's primary argument regarding the receiver, as best as we can ascertain from her appellant's brief, is that the circuit court did not have the legal or constitutional authority to appoint someone to assist in the sale of the marital home. Bonnie provides no Wisconsin statutory, case law, or constitutional provisions that support her position. Moreover, from the statements made by Bonnie in the hearings and her actions creating the need for these hearings, it was clear that she was unwilling to cooperate and would not sign anything to sell the marital residence. These facts were stated on the record during the second hearing on the motion to compel Bonnie's cooperation and were repeated in the related order signed by the court. The court also provided numerous opportunities for Bonnie to cooperate, but she chose not to. Given these facts, combined with the discretionary authority of the court to appoint a receiver as it deems necessary, it was not unreasonable for the court to decide that the appointment of a receiver was

6

required to effectuate the Findings. Based on our review of the record and the governing legal authority, we conclude that Bonnie has failed to demonstrate that the court's decision was the result of an erroneous exercise of discretion.

¶12 We now turn to Bonnie's argument that the circuit court erred in signing the writ of assistance as requested by the receiver. Bonnie advances constitutional arguments in her opposition to the writ which mirror those made in her opposition to appointing a receiver—none of which have merit.

¶13 A writ of assistance is "[a] writ to enforce a court's decree transferring real property whose title has been previously adjudicated." *Writ of Assistance*, BLACK'S LAW DICTIONARY 1846 (12th ed. 2024). "When any order or judgment is for the delivery of possession of property real or personal the party in whose favor it is entered is entitled to a writ of ... assistance upon application to the clerk." WIS. STAT. § 815.11.

¶14 In this case, the circuit court's prior orders mandated and confirmed that the marital residence must be sold and the proceeds equally divided between Bonnie and Anthony. The orders further terminated any rights Bonnie had in the property. The hearings related to the orders supported the court's conclusion that Bonnie was refusing to cooperate with selling and vacating the marital home as well as the need for a writ of assistance to protect the property and to ensure

Bonnie's cooperation. Bonnie fails to persuade us that the court erred when it granted the receiver's petition for a writ of assistance.[4]

¶15 In sum, Bonnie has failed to demonstrate, given the facts and controlling law before us, that the circuit court erroneously exercised its discretion in appointing a receiver to oversee the transfers of the marital home and other property items. Nor has she demonstrated any error with the court signing the requested writ of assistance.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] To the extent Bonnie intends to challenge the circuit court's findings in support of the two challenged orders, we conclude that her challenges amount to nothing more than a disagreement with the court's explicit credibility determinations. Evidence is incredible only when it is in conflict with the uniform course of nature or with fully established or conceded facts. *Haskins v. State*, 97 Wis. 2d 408, 425, 294 N.W.2d 25 (1980). Inconsistencies and contradictions in the statements of witnesses do not render the testimony inherently or patently incredible, but simply create a question of credibility for the trier of fact to resolve. *See id.* As we have noted, the court resolved any potential inconsistencies Bonnie points to in Anthony's favor, due at least in part to Bonnie's unwillingness to testify or present any evidence at trial.